[No. 917.]

# THE STATE OF NEVADA, APPELLANT, *v.* THE CALIFORNIA MINING CO., RESPONDENT.

A JUDGMENT FOR DELINQUENT TAXES MUST INCLUDE THE PENALTY.—In a suit for delinquent taxes and penalties, the attorneys for the state, including the district attorney, consented to withdraw the claim for penalties from the consideration of the court, and take judgment for the amount of the tax. The judgment was so entered: *Held*, error; that it was the duty of the court to include the amount of the penalties in the judgment.

IDEM—CONSENT OF ATTORNEY AND STATE OFFICERS VOID.—Neither the district attorney, other counsel for the state, nor any of the state officers, are clothed with any authority to give consent to a judgment for delinquent taxes, without including the penalties. ·

IDEM—RIGHT OF APPEAL.—As no consent could be given to the entry of the judgment: *Held*, that an appeal lies, in favor of the state, from the judgment.

SPECIAL LAW.—Section 3 of the "act to discontinue litigation touching inequitable claims for taxes and penalties " (Stat. 1879, 143): *Held*, unconstitutional, it being a special law in violation of sections 20 and 21 of art. IV, of the constitution. (Hawley, J., dissenting.)

IDEM.—A law which applies only to an individual or to a number of individuals selected out of the class to which they belong, is a special law.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts appear in the opinion.

*F. V. Drake*, District Attorney for Storey County, for Appellant:

I. The consent of parties did not authorize the court to enter a judgment for less than the law demanded.

The statute controls judicial officers as well as ministerial or executive officers. (Secs. 3153–3159, and 3232, 3233, 3238, 2 Comp. Laws; Cooley on Tax. 358, 359, and cases cited; *Thatcher* v. *Powell*, 6 Wheat. 119; *State* v. *C. P. R.*

R., 10 Nev. 49; *Hobart* v. *Hobart*, 45 Ia. 501; *Norwegian Street*, 81 Pa. St. 349; *Cohen* v. *Barrett*, 5 Cal. 195; *Hills* v. *Chicago*, 60 Ill. 86; *Cedar Rapids R. R. Co.* v. *Carroll Co.*, 41 Ia. 153; *State ex rel. Ash* v. *Parkinson*, 5 Nev. 15; *State* v. *Con. Va. Mfg. Co.*, 13 Id. 289; *Murray* v. *State*, 34 Tex. 331; *Wearne* v. *Haynes*, 13 Nev. 103.)

II. The attorneys on the part of the state had no authority to compromise the cause of action. (1 Wait's Actions and Defenses, p. 436, sec. 4; *Spears* v. *Ledergerber*, 56 Mo. 465; *Walden* v. *Bolton*, 55 Mo. 405; *Maddux* v. *Bevan*, 39 Md. 485, 496; *Adams* v. *Roller*, 35 Tex. 711; *Moye* v. *Cogdell*, 69 N. C. 93; *Marbourg* v. *Smith*, 11 Kans. 554; *State* v. *Manhattan Co.*, 4 Nev. 318; *Holker* v. *Parker*, 7 Cranch, 436; *Shaw* v. *Kidder*, 2 How. (N. Y.) Pr. 244; *Adams et al.* v. *Bradley et al.*, 9th U. S. Circuit Court; *Wadham* v. *Gay*, 73 Ill. 415; *Stackhouse* v. *O'Hara*, 14 Pa. St. 88; *Bates* v. *Seabury*, 1 Sprague, 433; *Derwort* v. *Looner*, 21 Conn. 245; *Nolan* v. *Jackson*, 16 Ill. 272; *Doub* v. *Barnes*, 1 Md. Ch. 127; *Davidson* v. *Rozier*, 23 Mo. 387; *Vail* v. *Conant*, 15 Vt. 314; *Smock* v. *Dade*, 5 Rand. (Va.) 639; *Smith* v. *Dixon*, 3 Metc. (Ky.) 438; *People ex rel. Rondel* v. *N. S. F. H. & R. R. A.*, 38 Cal. 565; *Waters' case*, 4 Court of Claims, 389; *Parsel* v. *Barnes*, 25 Ark. 261; *People* v. *Minor*, 2 Lans. 396; *State* v. *Allen*, 32 Tex. 273; *Nixon* v. *Auditor*, 25 La. An. 433; *Preston* v. *Hill*, 50 Cal. 43; *Swinfen* v. *Swinfen*, 24 Beav. 549; *Brackett* v. *Norton*, 4 Conn. 517; *Lockhart* v. *Wyatt*, 10 Ala. 231.)

III. The judgment was entered without dismissing any part of the action, and was a judicial determination of defendant's liability of the tax. Being such determination, the delinquencies or penalties attached by operation of law, and there can be no fact in the cases for further or future investigation. The delinquencies or percentages necessarily follow the tax. The appellate court has the power to render the judgment that should have been entered in the court below. (1 Comp. L. 1400; *State of Nevada* v. *Con. Va. Mfg. Co.*, 13 Nev. 289; *Lane* v. *Kirkman*, Minor (Ala.), 411; *Campbell* v. *May*, 31 Ala. 567; *Wroth* v. *Johnson*, 4 Har. & M. 284; *Gordon* v. *Downey*, 1 Gill, 41; *Kennedy* v. *Lowery*,

1 Binn. 393; *Darby* v. *Henderson*, 3 Munf. 115; *Blanc* v. *Sansum*, 2 Call, 415; *Mantz* v. *Hendley*, 2 Hen. & M. 308; *Smith* v. *Walker*, 1 Wash. 195; *McClure* v. *Lay*, 30 Ala. 208; *Emanuel* v. *Hatcher*, 19 La. An. 525; *O'Shea* v. *Kirker*, 8 Abb. Pr. 69; *Trevino* v. *Fernandez*, 13 Tex. 630; *Kinsey* v. *Stewart*, 14 Id. 457; *Guhan* v. *Neville*, 2 Cal. 81.)

IV. The act to discontinue litigation touching inequitable claims for taxes and penalties is unconstitutional, for several reasons:

1. The act embraces more than one subject, and the subjects are not expressed in the title. (Const., art. IV., sec. 17; 1 Comp. L. 108; Potter's Dwarris on Stats. 103–107, and cases cited; *State* v. *Silver*, 9 Nev. 227; *People* v. *Mahoney*, 13 Mich. 494.)

2. It is a special law in violation of secs. 20, 21, of art. IV., and secs. 1, 2, of art. VIII., of the constitution. (*Davies* v. *McKeeby*, 5 Nev. 369; *Holden* v. *James*, 11 Mass. 396; *Simonds* v. *Simonds*, 103 Id. 572; *State* v. *Esterbrook*, 3 Nev. 173; *Toledo R. R.* v. *Nordyke*, 27 Ind. 95; *Williams* v. *Bidleman*, 7 Nev. 68; *State* v. *Toll Road Co.*, 10 Id. 155.)

3. Section 3 of the act discloses an assumption of judicial functions on the part of the legislature and conflicts with art. III., Con. (Sedg. on Con. of St. and Const. Laws, 138 *et seq.*, 166–170, notes and cases; Cooley on Const. Lim. 99–105; *Kimball* v. *Town of Rosendale*, 42 Wis. 407; *Ervine's Appeal*, 16 Pa. St. 266; *Greenough* v. *Greenough*, 11 Id. 494; *De Chestellus* v. *Fairchild*, 15 Id. 18; *Trustees* v. *Baily*, 10 Fla. 238; *Taylor* v. *Place*, 4 R. I. 324; *Denny* v. *Mattoon*, 2 Allen, 361; *Governor* v. *Porter*, 5 Humph. 165; *State* v. *Fleming*, 7 Id. 152; *People* v. *Supervisors*, 16 N.Y. 424; *Reisser* v. *Tell Ass'n*, 4 W. & S. 227; *Moser* v. *White*, 29 Mich. 59; *Butler* v. *Supervisors*, 26 Id. 22; *Hart* v. *Henderson*, 17 Id. 218; *People* v. *Goldtree*, 44 Cal. 323; *McDaniel* v. *Correll*, 19 Ill. 226; *Holden* v. *James*, 11 Mass. 402–405; *Picquet, Appellant*, 5 Pick. 64.)

4. It impairs the obligations of contracts. (Sedg. on Con. of St. & Const. Law, 630, 631; Pott. Dwar. on Stats. 474, 477, 478; *Rhodes* v. *O'Farrell*, 2 Nev. 60; Cooley on Const. Lim. 289; *Oatman* v. *Bond*, 15 Wis. 28.

*M. A. Murphy*, Attorney-General, and *R. M. Clarke*, also for Appellant:

I. Upon the point that the act is an exercise by the legislature of judicial functions. (Sedg. on St. & Const. Law, 166–170; 4 Wheat. 558; 5 Pick. 65–70; 11 Mass. 396, 402–405; 2 Allen, 361, 376–378; 4 R. I. 324–337; 26 Mich. 22–26; 29 Id. 57.)

II. By section 3 in question the legislature attempts to ratify and confirm an unauthorized act of the district attorney in remitting a tax. The legislature have no power to remit a tax. It can not relieve a party from the payment of a tax which has been levied by the law. If the legislature can relieve a tax-payer from the payment of his taxes after they have been levied and become due, *a fortiori*, it can relieve him before the taxes have been levied and have become due. To relieve a tax-payer from the payment of his taxes, either before or after levy, would be to take the burdens of government from one and put them upon another. This would produce precisely the inequality of taxation which art X. of the Constitution of Nevada inhibits. (Const. Nev., art. X.; Cooley on Tax. 152, 153; 3 Ohio St. 1, 14, 15; 5 Id. 589, 592; 9 Wis. 410, 420–423; 26 Mich. 26; 34 Cal. 432; 37 Id. 242, 246; 51 Id. 19, 23; 3 Nev. 179, 180.)

III. The whole act, of which sec. 3 is but a part, is invalid for the reason that it is a " special law " for the " collection of taxes," which is prohibited by sec. 20 of article IV. of the constitution of Nevada. (Const. of Nev., art. IV., sec. 20.)

It is special because it relates to particular suits only. It has no general application. It is not a rule of conduct or principle for the government of the people. It has no prospective operation. It seeks to affirm certain judgments by confirming the agreement of the district attorney of Storey county made in special cases. It has none of the characteristics of a general law, and all the characteristics of a special law. It must be pleaded, and requires evidence to give it application and effect.

*C. J. Hillyer*, for Respondent:

I. The supreme court of this state is nowhere and in no

manner charged with the supervision of the collection of the revenue. The jurisdiction accrues solely from the fact that an appeal has been taken from a judgment in a civil action, and the determination must be in accordance with the principles which govern appeals in all civil actions. (2 Comp. L. 196 (Rev. Act., sec. 36); *Mayo* v. *Ah Loy*, 32 Cal. 477; *Eitel* v. *Foote*, 39 Cal. 439.)

II. The district attorney is appointed by law to represent the state as its attorney, and as to all matters of practice he is invested with the same authority, and charged with the same responsibility as other attorneys in other civil actions. (Rev. Act., sec. 29.)

III. The judgment was entered by consent of the attorney, and can not therefore be disturbed even if erroneous on its face. (13 Cal. 191; 22 Id. 456; 6 Id. 666; 9 Id. 277.)

IV. What the attorneys for the state really did, and all that they did, was to say that in the then pending action they would no further proceed for the collection of the penalties, and their authority to do this is, under the decisions, beyond reasonable question. (*Holmes* v. *Rodgers*, 13 Cal. 191; *Farmers' Bank* v. *Sprigg*, 11 Md. 389; *Gaillard* v. *Smart*, 6 Cow. 383; *Board of Commissioners* v. *Younger*, 29 Cal. 147.) The record does not disclose a want of special authority, and in the absence of any showing, authority will be presumed. (See 6 Cow. 383, above cited, and *Preston* v. *Hill*, 50 Cal. 55, 56.)

V. The order of withdrawal, even if authorized, was not void, but at most merely voidable.

The right to avoid an act of this character is lost by acquiescence, and the act is ratified without respect to time, by the acceptance and retention by the client of that which was the consideration for which it was obtained. (*Mayor* v. *Foulkrod*, 4 Wash. C. C. 511.)

VI. The authority to commence and defend suits whenever in their discretion the interests of the state will be thereby subserved, necessarily includes the authority to exercise their own judgment in refusing to institute legal proceedings, and by so doing, to bind the state in its relation

to parties who are misled or prejudiced, or acquire equities thereby.

VII. The act in question is not unconstitutional.

1. The title embraces but one subject. Each section of the act provides that under certain conditions there shall be no further litigation concerning a specified class of taxes or penalties.

2. The third section is not an encroachment upon judicial prerogatives.

All the decisions cited by the counsel for appellant are of cases involving the question as to how far litigation between private individuals, and respecting private rights, can be controlled by legislative action. Such cases have no relevancy to the present question.

3. The objection that this is special legislation needs no other answer than a reference to the numerous decisions of this court, upholding the constitutionality of those legislative provisions prescribing a special mode for the assessment and collection of taxes upon the proceeds of mines. (See also, *Youngs* v. *Hall*, 9 Nev. 212.)

VIII. The questions whether a penalty is part of a tax, and whether the legislature has the power to remit a tax or penalty, are in no way involved in the decision of these appeals. The section being considered does not purport to remit anything. It does not deal with any liability for taxes or penalties, but only with the validity of a certain class of judgments. This court has no means of knowing whether any tax or penalty was ever due from these defendants. The question of original liability has nothing to do with the question whether a judicial investigation has been so conducted that the judgment in which it resulted can be reversed.

The latter is the only question before this court. The only bearing which this section can have upon the controversy is by way of ratification of the act of the state's attorney. The legislature was asked to pass it only out of abundant caution, because it had been argued, that the consenting by the district attorney to a judgment for less than the amount claimed in the complaint, was in the nature

of a compromise, and that the usual presumption in favor of special authority to the attorney could not be here indulged, because the client was the state.

By the Court, BEATTY, C. J..

The complaint in this action was filed March 16, 1877. It showed by the usual averments that the taxes due from the corporation defendant, on account of the proceeds of its mine for the quarter year, ending September 30, 1876, were delinquent, and prayed judgment therefor and for the prescribed penalties and costs.

To this complaint the defendants demurred, upon grounds which are now confessed to have been without merit. Such being the state of the pleadings, the following judgment was entered by order of the court on the fifth of May, 1877:

"This cause coming on regularly for hearing by consent of parties at this day, now come said parties in open court by their respective attorneys, F. V. Drake, district attorney, and Lewis & Deal, attorneys for plaintiff, and R. S. and W. S. Mesick, attorneys for defendant, and the said plaintiff, by consent of defendant, withdraws its claim from the consideration of the court for the penalties mentioned in the complaint in said cause, and takes judgment for the sum of seventy-two thousand three hundred and fifty-five dollars and eighty-nine cents, the tax sued for, and one thousand five hundred dollars, fees for district attorney, besides cost of suit herein, taxed at forty-eight dollars and seventy-nine cents. Wherefore it is ordered and adjudged that the plaintiff have and recover in this action of and from the defendant the sum of seventy-three thousand nine hundred and four dollars and sixty-eight cents, in United States gold coin, and that plaintiff have execution therefor."

From this judgment the plaintiff appeals, and, there being no statement of the case annexed to the record, the ques- is, whether error appears upon the judgment roll.

It is not, and can not be, pretended that the pleadings sustain the judgment. The complaint shows that a tax of upwards of seventy-two thousand dollars was assessed upon the proceeds of the defendants' mine, taken at a valuation

fixed by its own agents, in the sworn statement which they were required to make; it shows that this tax had become delinquent, and that a right of action had arisen thereupon before suit brought. There was but one way of putting the truth of these allegations in issue, and that was by a verified answer. (Comp. L. 3156.) But no such nor any other answer was ever filed. The complaint was never amended, and, there is no trace upon the record of any sort of retraction of its allegations, or of any admission, solemn or otherwise, that it is in any particular untrue. Such being the case, we repeat, the judgment is not sustained by the pleadings; for the uncontradicted and unretracted allegations of the complaint are that there was due from the defendant at the time the action was commenced, not only the sum of seventy-two thousand three hundred and fifty-nine dollars and eighty-nine cents, delinquent taxes, but, in addition thereto, upwards of eighteen thousand dollars—the penalty of twenty-five per cent. of the amount delinquent. The right to recover which follows, as a direct and inevitable legal consequence, from the right to recover the tax itself. It was the imperative duty of the district attorney to insert in the complaint a demand for this penalty, and it was no less the imperative duty of the court to include it in the judgment. (Comp. L. 3238.) The validity of this law has never been questioned, but on the contrary, has been expressly affirmed by this court. (*State* v. *California Mining Co.*, 13 Nev. 206.) And there can be no doubt as to its construction. It is mandatory in its terms and in its spirit; and the express injunction which it lays upon the court is as direct and positive as that which it lays upon the district attorney. Not only must the complaint demand but "*the judgment shall be entered for twenty-five per cent. in addition to the tax,*" etc. How then is this judgment, entered for the tax without the penalty, to be vindicated? It is not the judgment which, on the case presented by the record, the law commanded the district court to enter, and it is therefore erroneous, unless it is rendered valid by the consent therein recited of the district attorney. The consent of Messrs. Lewis & Deal, who are also mentioned as

appearing for the state, can add nothing to the force or effect of the consent of the district attorney. For under the general laws of the state (Comp. L. 3153, 3231), the district attorneys of the several counties, and they alone, are authorized to commence actions for the collection of taxes returned delinquent. In all such cases they have exclusive charge of the litigation, as representatives of the state, so long as it is carried on in the district courts. If other attorneys appear, they necessarily act in a purely advisory capacity, or, if they exercise any authority whatever, it must be derived from the district attorneys, and can never, therefore, exceed that which the statutes have conferred upon them.

What, then, was the effect of the district attorney's consent?

And first, what did he consent to?

There has been some controversy between counsel, but not a very serious one, as to the meaning of the stipulation recited in the judgment. Indeed, the matter is too plain to admit of serious controversy. It is frankly conceded by counsel for respondent that, in point of fact, the transaction was nothing more nor less than a compromise, by which the district attorney, in consideration of being allowed, without further delay, to take a judgment for the amount of the tax, and a part of his own fees, consented to waive the claims of the state as to the accrued penalty. Counsel, however, contends that the transaction, as it appears upon the record, will bear, and that this court ought to allow it, a different construction. We shall not attempt to state, or to answer in detail, the argument upon this point. We content ourselves with saying that to us the stipulation recited in the judgment appears to demand a construction strictly in accordance with the admitted fact that it was intended to be a compromise of the cause of action. The district attorney consented that the court might disregard the mandate of the law in entering judgment. He did not, as suggested, merely dismiss as to a part of the cause of action. He consented to the entry of a judgment for a part only of an entire cause of action, without reserving any right to sue for the remainder, separately; and the

effect was, if his action is sustained, to forever bar the right of the state to recover the penalty, the claim to which he then withdrew, or attempted to withdraw, from the consideration of the court. In effect, and in short, he consented to relinquish then and forever, the claim of the state for one fifth part of the sum due, in consideration of being allowed to take judgment for the balance.

Having thus ascertained what it was that the district attorney consented to, the next question is: Had he any authority to give such consent?

It is admitted that an attorney, without a special authority, can not compromise his client's demand, or, at least, that he could not do so before the passage of our statute relative to attorneys. (Comp. L. 884 *et seq.*) There seems to be a claim on the part of respondent that, under the provisions of that statute, his powers have been greatly enlarged. The language relied on in support of this view is as follows: "An attorney and counselor shall have authority: First—To bind his client in any of the steps of an action or proceeding by his agreement, filed with the clerk or entered upon the minutes of the court, but not otherwise." (Sec. 893.)

This, however, is not an enlargement of the attorney's authority, but is merely a restriction as to the method of exercising it. (*Preston* v. *Hill*, 50 Cal. 53.) Under the statute, therefore, as before the statute, it remains true that an attorney at law can not compromise his client's cause of action without being especially authorized so to do. It is further admitted, that the district attorneys of the several counties have no greater authority (under the statutes) in the conduct of tax suits than is ordinarily conferred by a general retainer in a controversy between private parties. It follows from these admitted propositions that, *under the law*, a district attorney has no authority to compromise a tax suit.

But it has been often held that, in the absence of proof, an attorney, who has compromised his client's cause of action, will be presumed to have been specially authorized so to do; and such is probably the general rule.

It is upon this proposition that counsel for respondent places his main reliance. He contends that in this case, as in other cases, it must be presumed that the district attorney had a special authority to make the compromise upon which the judgment was entered.

Counsel for appellant contends, on the contrary, that, although it may be proper and just, as well as convenient to the administration of justice, to presume such special authority where the client is a natural person or corporation capable of conferring it, by means of which courts can have no judicial knowledge, it is far otherwise in the case of the district attorney, who derives all his authority from public statutes, of which the courts are bound to take notice.

This argument is unanswerable. The reason why an attorney for a natural person or private corporation is presumed to have a special authority for any compromise he may make of the cause of action is that it is highly probable such authority has been given. He is in constant communication with his client, and acting under his instructions; his client may at any moment instruct him to compromise; if he compromises without authority, he exposes himself to a serious personal liability without any adequate motive, and therefore it is highly improbable he will do so. Consequently the presumption that he will not compromise his client's demand without authority, rests, like all other presumptions of fact, upon the probability of its truth.

In the case of the district attorney this reason utterly fails. To presume that he has a special authority to compromise a claim for delinquent taxes, would be to presume a fact which is legally impossible. The only means by which his client can, under the constitution, confer any authority upon the officers charged with the collection of its revenues, is a general statute; and the courts therefore know with absolute certainty that an authority, not conferred by the statutes, which they are bound to notice, does not exist.

In this case we know with absolute certainty, and the district court and the respondent and its counsel must be held to have known, that neither the district attorney, nor any other officer or person whatsoever, had any authority to com-

promise the cause of action stated in the complaint. His consent to the judgment as entered was therefore void, and the judgment is necessarily just as erroneous with his consent as it would have become without it.

That this judgment, which, as we have shown, is not sustained by the pleadings, and has nothing else to sustain it, must be reversed, unless it is cured by the act of the legislature hereafter to be noticed, seems to be a necessary consequence of the error disclosed by the record. This, however, is denied. Counsel for respondent insists that an appeal will not lie, that the remedy, and the only remedy, is a bill in equity to set aside the judgment; because, he says, two *facts* must be established in order to entitle the state to relief, viz.: First, that the state did not consent to the compromise, and, second, that it suffered detriment thereby.

But we have shown that there can be no question of fact in regard to the consent of the state. That it did not consent is a conclusion of law, and it would be absurd to frame an issue of fact in order to determine a question that the law has determined in advance.

And the fact that this question is so determined in advance makes all the difference in the world with respect to the remedy. Ordinarily a consent judgment is *prima facie* valid, because the party himself is presumed to have consented. An appeal therefore is no remedy, and he is driven to a separate action in order to rebut the presumption which gives a *prima facie* validity to the judgment. Here, on the contrary, there is no such presumption to sustain the validity of the judgment. It is erroneous on its face, an appeal lies to correct it, and the very fact that an appeal does lie would probably exclude any other remedy.

As to the matter of detriment to the interests of the state, that also is a conclusion of law. The judgment being shown to be erroneous, damage is presumed.

These reasons seem to us fully to sustain our conclusion that the judgment appealed from was erroneous, and that an appeal was the proper remedy for the state. We are glad to be able to add that, in a case exactly in point, the supreme court of Texas reached the same conclusion.

(*State* v. *Allen*, 32 Tex. 273.)   No other case in point has been brought to our notice.

Another distinct ground upon which counsel for respondent contends that this appeal should not be entertained is, that it was not taken until the time for taking it had nearly elapsed, and that the governor and attorney-general, not having instituted any proceedings against the judgment during all that time, manifested their acquiescence in the compromise.   There are more answers than one to this proposition.   In the first place, it is at least doubtful if any proceeding could have been taken against the judgment except this appeal.   In the next place the law allows a year for taking an appeal, and when an appeal is properly taken within a year, this Court is bound to entertain it.   Finally, it may be said that acquiescence is only a mode of ratification, and that, since the governor and attorney-general had no authority to make the compromise, they had no power to ratify it, either directly or indirectly—by express affirmance or by acceptance of its results.

Moreover, the action of all other officers and persons in the direction of ratification becomes unimportant in view of the subsequent action of the legislature.   An attempt was made, as we shall see, to ratify this compromise by law, and we shall have occasion to inquire whether the law-making power of the state was equal to the task.   If it was, then no other ratification was needed; but if it was not, it is very clear that no other could be effective.

It is not strictly necessary, perhaps, to notice that portion of respondent's argument in which our censure is invoked upon the conduct of the district attorney.   It is certain that the circumstance that this appeal was taken by the same person who consented to the judgment, does not affect the right of the state to be heard.   The state did not deceive or mislead any one.   It had never clothed the district attorney with an apparent authority to compromise its claims, and if any one was in fact deceived in regard to that matter, he was deceived only because he chose to ignore, not only the terms of the statute, but the decisions of this

court, which has more than once denied the right of county commissioners, district attorneys, etc., to compromise claims for delinquent taxes. (See 9 Nev. 88; 10 Id. 84.) This all parties must be held to have known. If they did not know it, they fell into a mistake which was their own fault, and which therefore does not preclude the state from asserting its rights; if they did know it, and acted in defiance of the law, they have even less claim to forbearance.

But, as above intimated, we find no occasion to censure any one concerned in this compromise. We have no reason to suppose that any one acted otherwise than in good faith; and we assume that all parties were simply mistaken as to the authority of the district attorney. It appears that after the entry of judgment he discovered his mistake, and he did but his duty in attempting to remedy it. He first, as is well known, commenced a separate action for the penalties, going upon the theory that this action, as far as related thereto, had been dismissed without prejudice. In the district court he recovered a judgment; but on appeal, that judgment was reversed upon the ground that his complaint showed that this action for the tax and penalties was still pending. (13 Nev. 289.)

In considering the points involved in that case, we had occasion to say (p. 295): "The question of the right of the state to recover the penalties is purely a question of law, and neither the district attorney nor any other representative of the state had any power to absolve the district court from the duty of deciding it, in an action which involved the penalties. If, without dismissing the action as to the penalties, the court was asked to ignore the state's right to recover them, it was asked to commit an error for which its judgment might have been reversed on appeal, notwithstanding the unauthorized consent of the district attorney."

It was this expression of our opinion, not lightly made, that no doubt led to the taking of this appeal; and we are even more thoroughly satisfied, after the fuller examination which we have since made of the questions involved, than we were then, that it is the proper remedy for the state in a case of this kind.

We come next to a more serious and important, if not a more difficult question:

After this case had been argued and submitted upon the points above discussed, the legislature passed an act entitled "An act to discontinue litigation touching inequitable claims for taxes and penalties" (Stats. 1879, 143), the third section of which reads as follows:

"Sec. 3. Where, in suits commenced for the recovery of taxes delinquent prior to the first day of July, 1877, a judgment has, by the consent of the district attorney, been entered for the amount of the original tax and costs, exclusive of any penalty or percentage due, or claimed by reason of default in payment at the time prescribed by law, the action of the district attorney in so consenting to said judgment is hereby ratified and approved."

There can be no doubt that the intention of the legislature in passing this act was to give validity to the judgment in this and other similar cases; and, if it is constitutional, it must undoubtedly be allowed that effect.

But a re-argument of the case having been directed, upon application of the attorney-general, he has raised various objections to the constitutionality of the act. Of these various objections we deem it unnecessary to consider more than one, as that, in our opinion, is conclusive so far as the act in question affects this and similar cases—cases, that is to say, coming within the terms of section three.

This part of the act is in plain and palpable violation of sections 20 and 21 of article IV. of the constitution. By section 20 the legislature is prohibited from passing local or special laws in certain enumerated cases; and section 21 requires that in all such enumerated cases "all laws shall be general and of uniform operation throughout the state." The assessment and collection of taxes for state, county, and township purposes is one of the cases enumerated in section 20, and it follows inevitably that a law on this subject, to possess any validity, must not be special, but must, on the contrary, be general and of uniform operation throughout the state. The only question to be decided, therefore, is whether this law is special and not general, for that it re-

lates to the collection of taxes is not and can not be denied.

What, then, is a special law within the meaning of the provisions of our constitution above cited? We need not go beyond the decisions of this court to seek a definition sufficient for the purposes of this case. If a thorough and comprehensive and exact definition were required, it would be found, perhaps, that there were some differences of opinion to be reconciled; but whenever the question has been presented in this court or any other court, so far as our observation has extended, it has always been agreed that a law which applies only to an individual or to a number of individuals selected out of the class to which they belong, is a special and not a general law. (See opinion of Whitman, J., in *Clarke* v. *Irwin*, 5 Nev. 120, 121; opinion of Lewis, C. J., in *State ex rel. Stoutemeyer* v. *Duffy*, 7 Nev. 348; opinions of Belknap and Hawley, JJ., in *Youngs* v. *Hall*, 9 Nev. 217, 226; and see *Ex parte Spinney*, 10 Nev. 319.) In several of these cases the definitions of the text-writers and the decisions of other courts were thoroughly reviewed; and, to the extent to which they are here relied upon, they are undoubtedly sustained, not only by the weight of authority, but by all authority.

Assuming, then, as the accepted definition of a special law, that it is one which affects only individuals and not a class— one which imposes special burdens, or confers peculiar privileges upon one or more persons in no wise distinguished from others of the same category, we will proceed to examine the terms and effect of the act referred to.

In terms, it is a ratification of the unauthorized and illegal acts of district attorneys in consenting to a remission of the penalties imposed by the laws of the state upon delinquent tax-payers. Its effect, if held valid, would be to confer a valuable and peculiar privilege upon those individuals who, by a violation of official duty on the part of one or more of the district attorneys of the state, have been allowed to escape the penalty which the law imposes upon the class to which they belong, the individuals so favored not being distinguished in any manner from others embraced

by the terms of the general laws, except by the mere circumstance that they have been arbitrarily and illegally selected as recipients of the favor.

The general law applicable to this case is the act of March 7, 1873 (Comp. L. 3238), which puts in one category all delinquent tax-payers, the amount of whose delinquency exceeds three hundred dollars, against whom, without exception, the district attorneys are required to demand, and the district courts to enter judgment, not only for the amount delinquent, but also for a penalty of twenty-five per cent. in addition thereto. This act is supplementary to and a part of the general revenue law, the law for the assessment and collection of state and county taxes, and would have been unconstitutional and void *ab initio*, if it had not been made to operate uniformly throughout the state against every individual of the class which it defines. If the legislature had attempted, by a proviso or otherwise, to exempt from its operation any individual or individuals, in nowise distinguished from others upon whom it was left operative, either the proviso would have been held void, or the whole law would have been declared unconstitutional.

But the law itself is open to no such objection; it is what the constitution requires that it should be; it is general, and designed to be of uniform operation throughout the state. As a matter of fact, it has been generally enforced; the fact is notorious, and the proof of it is abundantly forthcoming in the records of cases decided in this court. But it is not upon the notorious fact, or the proofs alluded to, that we rely. The legal presumption is, that officers do their duty, and we must presume, in the absence of proof to the contrary, that in every case calling for the application of the law referred to, judgment has been entered for the penalty in addition to the tax—that conformity to the law on the part of public officers has been the rule, and disregard of its mandates the rare exception.

We would infer from the terms of the act under consideration that in some one or more instances one or more district attorneys of the state have disregarded the general law; and we know from the cases now on appeal to this court

that in just four actions—two against the respondent, and two against the Consolidated Virginia Mining Company—the district attorney of Storey county gave the consent which the legislature has attempted to ratify. We know of no other instances in which this has happened, and we are bound to suppose that there are none.

It would make no manner of difference, however, if what has happened in two cases in one county of the state had happened in dozens of cases in every county. It would remain inexorably true, that the favor extended to the individuals arbitrarily selected by the district attorneys was a favor which a general law of the state denied to others of the same class. If, therefore, such acts can be made valid by a retrospective law, it is because, and only because, the legislature can do indirectly through the agency of the district attorneys, what it could not do directly by statutory enactment.

Counsel for respondent admits that the legislature can not cure retrospectively what it could not originally authorize, but he asks, with great confidence: " Could the legislature, in the original revenue bill, have constitutionally provided, that in actions to collect taxes the district attorney might, where in his discretion he deemed it for the best interests of the state, consent to a judgment for a portion of the tax claimed in the complaint or for the amount of the tax without any penalty ? " He adds: " I scarcely think this will be denied.":

But counsel is mistaken. We do deny his proposition, and deny it most emphatically. We deny that the legislature can delegate a power which it does not itself possess. A revenue law must, as we have seen, be general, and of uniform operation throughout the state; it must have the same operation in one county that it has in every other county under similar circumstances; it must operate, not upon individuals as such, but upon defined classes. No matter how much it may be deemed to the interest of the state to exempt individuals from the operation of any provision of the law, the legislature has no power to exempt them except by defining a class which will comprise them

and exempting the whole class. In that case, not only the individuals intended, but every other individual comprised under the same definition, would be entitled to the exemption.

This is the utmost stretch of discretion allowed to the legislature itself, and it can delegate no greater power to the district attorneys or any other officers or agents. Admitting, without deciding, that the law might have constitutionally provided that, under certain circumstances, or upon certain conditions or terms, district attorneys should be authorized to remit the penalty after suit brought for delinquent taxes; still nothing would have been left to the discretion of the district attorneys. Such a law would have been held, upon a familiar principle, not merely permissive, but mandatory; and every delinquent, coming within the defined circumstances, or having performed the prescribed terms or conditions, would have been held entitled to the exemption as matter of right; and so the operation of the law would have been uniform. But could this be said of a law which left it to the mere discretion of a dozen district attorneys in a dozen different counties, to enforce the penalty against one individual and remit it in favor of another individual comprised in the same legal classification? So far from operating with uniformity, such a law would lead to the most odious and tyrannical discriminations. In one county the penalty might be enforced against all delinquents; in another it might be remitted in favor of all; in still others it might be enforced against the enemies, political or personal, of the district attorney, and remitted in favor of his friends. To call such an engine of oppression a law, is an abuse of language. No such enactment has ever been held to be law in this court or any court under a constitution like ours. The decision referred to by counsel (*State ex rel. Mason* v. *Comm'rs*, 7 Nev. 392), sanctions nothing except the power conferred on county commissioners to equalize taxes. This being a judicial power, and its exercise not subject to review, except when there has been an excess of jurisdiction, it is certainly capable of being abused; but it has never been pretended that

the county commissioners have a lawful right to raise one man's assessment and lower another's under the same circumstances, or to discharge the assessment of A. and to refuse to discharge the assessment of B. on identical facts. That they might, through ignorance or corruption, do such things, is no argument. The question is, not what a court of last resort may do in defiance of law, but what the legislature may expressly authorize an officer to do, who has and can have no judicial powers.

But even if we were to admit, which we are far from doing, that the legislature might authorize the several district attorneys of the state, in their discretion, to remit these penalties whenever they deemed it of public advantage to do so, such a law—odious and oppressive and demoralizing as it would be in practice—would still, from a constitutional point of view, possess one immeasurable advantage over the act under discussion. Being prospective in its operation, every delinquent tax-payer in the state could avail himself of its provisions, to the extent, at least, of applying for relief; and every district attorney in the state, provided he thought it for the public advantage, could grant the remission without disobeying the law or violating his duty. Then, as it is possible to suppose that every district attorney would entertain the same views of public expediency, the law could be supposed (though in a most improbable contingency) *capable* of uniformity of operation; and upon that ground, if upon any, its constitutionality might be upheld. In order to do so, however, it would be necessary to hold, at the same time, that the legislature can delegate to subordinate ministerial officers its own high sovereign attribute of judging and determining questions of state policy.

But it is needless to pursue this line of speculation, for the act whose constitutionality we are now to determine is purely retrospective in its operation, and is thus broadly discriminated from the act supposed, by the consideration that its only possible effect is to confer an exceptional privilege on a few individuals who have been arbitrarily selected out of the class to which the law assigns them.

The law of 1873, which imposes the penalty upon delin-

quents of this class, is still in force; it has never, since its original enactment, been repealed or suspended; the legal presumption is, and the fact is, that when penalties have accrued under its provisions, the delinquents have been compelled to pay them, except in the instances brought to our notice by the appeals now pending in this court.   To hold that these two corporations can, by the means resorted to, be excepted from the operation of a law which the constitution requires to be general and of uniform operation throughout the state, would be to disregard all precedent and the plainest dictates of common sense.

We shall make no extended reference to the authorities which are cited in such abundance in the briefs of the counsel for the state.   We content ourselves with two short quotations, which contain the substance of a great many decisions:

"It is manifestly contrary to the first principles of civil liberty and natural justice, and to the spirit of our constitution and laws, that any one citizen should enjoy privileges and advantages which are denied to all others under like circumstances, or that any one should be subjected to losses, damages, suits, or actions, from which all others, under like circumstances, are exempted." (*Holden* v. *James, Adm'r,* 11 Mass. 404.)

"We can not view it in that light, for it ought not to be presumed that the legislature intended to do what by the constitution they have no authority to do, and we think it very clear that they have no authority by the constitution to suspend any of the general laws, limiting the suspension to an individual person, and leaving the law still in force in regard to every one else." (*Picquet, Appellant,* 5 Pick. 68.)   This last quotation is directly applicable; and it is observed that neither of these decisions was based upon an express constitutional provision, like that above cited from our own; but the authority of the legislature to exempt individuals from the operation of laws applicable to others in the same situation, is denied upon the ground that its existence is inconsistent with the first principles of civil liberty and natural justice, and the spirit of the constitution and laws.

In opposition to all this, counsel for respondent has nothing to urge except that this court has held valid the law for the assessment of the proceeds of the mines which he claims is exactly on a par with the act under consideration.

We can hardly suppose that this argument is seriously advanced. The distinction between the two acts is too obvious to have been overlooked. The first applies to every individual of a class of tax-payers, a class recognized and specially provided for in the constitution itself. (Art. X.) Under its provisions the proceeds only of the mines can be taxed. The yearly product of a mine can not be ascertained until the year has elapsed. The consequence is, that the mining proceeds must be assessed periodically, or their assessment must be deferred a whole year after the assessment of all other species of property for any given fiscal year. It is the constitution, therefore, not the law, which is responsifor the discrimination referred to; the latter merely recognizes and does the best it can with the conditions created by the former. The legislature found a class of tax-payers set apart from others by the instrument to which it owes its own existence; it passed a law applicable to all members of that class, and yet counsel can see no distinction between that law, and an act which attempts to suspend the operation of a general revenue law for the benefit of two or three individuals. We think that we can not only see a distinction, but that it is too plain for serious discussion.

The only question remaining to be considered is: What order is to be made concerning the judgment appealed from? The district attorney, appearing in behalf of the state, claims that we should order it modified by the addition of the penalties. But we think it very clear that we have no authority to do so. The defendant is entitled to an opportunity to answer and defend the action, if it has a defense, and we can not know that it has none.

It is therefore ordered that the judgment appealed from be reversed, and the cause remanded, with directions to the district court to overrule defendant's demurrer and allow a reasonable time for answering.

HAWLEY, J., dissenting:

In the light of the application of the legal principles decided by this court, in *Youngs* v. *Hall*, 9 Nev. 212, it can not consistently be said that the "Act to discontinue litigation touching inequitable claims for taxes and penalties" (Stat. 1879, 143) is a special law, in violation of sections 20 and 21 of Article IV. of the constitution.

I was, and still am, of the opinion that the conclusion reached by the court in *Youngs* v. *Hall*, was erroneous. But having expressed my individual views (9 Nev. 225) I have ever since considered it to be my duty to follow it, especially in sustaining laws of the same character. (*Odd Fellows' Savings and Commercial Bank* v. *Quillen*, 11 Nev. 109.)

In accepting that decision as the law of this state, the legislative and executive departments had the unquestioned right to believe that the act under consideration was not repugnant to these provisions of the constitution.

The act, within the reasoning of this court in *Youngs* v. *Hall*, does certainly apply to all persons who come within the relation and circumstances specified in section 3. It applies to all persons and all suits similarly situated. To that extent, at least, it is general and uniform in its operation. No individuals are distinguished from others in the same category.

Whether there are four cases or four thousand to which the provisions of section 3 apply, is wholly immaterial.

If laws of this character are general and uniform, it is "not because they operate upon every person in the state, for they do not, but because every person who is brought within the relations and circumstances provided for is affected by the law. They are general and uniform in their operation upon all persons in the like situation, and the fact of their being uniform is not affected by the number of persons within the scope of their operation." (*McAunich* v. *The M. & M. R. R. Co.* 20 Iowa, 343.)

My attention is called to *Holden* v. *James*, 11 Mass. 404, and other similar cases, which, in my judgment, are not

analogous to the case in hand. The court, in *Holden* v. *James*, was discussing a resolve, passed by the legislature of that state, giving to Holden the right to collect certain claims from the administrator of an estate, notwithstanding the fact that said claims were barred by the statute of limitations. No other person, or persons, having similar claims could collect their demands.

It was a law in favor of an individual, where other individuals similarly situated could not avail themselves of its provisions. To hold such laws to be general and uniform " would be to disregard all precedent and the plainest dictates of common sense."

From the views I entertain of this case, it is unnecessary to decide the question, propounded by counsel, whether the legislature could delegate the power to the district attorneys, or other officers, to remit any portion of the tax or penalty in cases where, in their discretion, the justice of the case might so require. The legislature of this state has exercised this power, to a certain extent, in the passage of the revenue law. Section 29 of the act provides that "no suit for the collection of delinquent taxes, where the amount is less than three hundred dollars, shall be commenced, except by the direction" of the board of county commissioners. (2 Comp. L. 3153.)

Now it could be said that such a law might "lead to the most odious and tyrannical discriminations;" that in one county the district attorney might be authorized to bring suit against every delinquent, while in others he might be directed not to bring suit against any; or in some counties he might be authorized to bring suit against the "enemies, political or personal," of the commissioners and not to bring suit against their friends. Such ideas are possible to the imagination, but are improbable and unreal in fact. No such result has followed from the passage of the law. If such laws are unconstitutional, it must be upon other grounds.

The fact that power, wherever lodged, may be abused, is no argument against its exercise. (*State ex rel. Ash* v. *Parkinson*, 5 Nev. 16; *State ex rel. Clarke* v. *Irwin*, 5 Id. 112;

*Phillips* v. *Welch*, 12 Id. 179; *Aude* v. *Kinkead*, 14 Id. 117.) The remedy lies with the people, not with the courts.

It is, unfortunately, true that men are occasionally found in the grand army of office-holders who violate their solemn pledges to the people and willfully betray their trust. But, in my judgment, these are rare exceptions. As a rule, the officers are governed, as they all ought to be, by higher and nobler motives; they faithfully, honestly, and impartially discharge their respective duties. It is, at least, upon this presumption, that the government, national and state, continually acts. It would indeed be difficult, if not impossible, for the people to live, or for a government to exist, under a constitution which denied the exercise of any power, upon the ground that it might possibly be abused.

The legislative, executive, and judicial departments of this state are separate and distinct. Each is sovereign within its respective sphere, and each is directly responsible to the people for its official acts.

Where the power which is exercised is legislative in its character, the courts can enforce only those limitations which the constitution imposes, and not those implied restrictions which, resting in theory only, the people have been satisfied to leave to the judgment, patriotism, and sense of justice of their representatives. (Cooley on Con. Lim. 129.)

The fact is, that the protection which the people enjoy against unwise and improper legislation is not derived solely from constitutional restrictions. It is derived, to a great extent, from the force of public opinion and the character of our representatives. This court has the power to keep the legislature within the terms and plain import of the constitution. There its duty ends. "Whether the power of the legislature was reasonably or unreasonably exercised; whether it was wise or unwise, expedient or inexpedient, to enact the law, are questions left exclusively to other departments of our state government to decide, and their judgment must necessarily be decisive upon these questions." (*Ex parte Spinney*, 10 Nev. 337; *Gibson* v. *Mason*, 5 Id. 284; *State* v. *McClear*, 11 Id. 39; *Dayton M. Co.* v. *Seawell*,

11 Id. 394; *Hess* v. *Pegg*, 7 Id. 24; *Evans* v. *Job*, 8 Id. 322.)

To the extent above expressed, I dissent from the views enunciated by the court upon the constitutional questions discussed in the opinion of the chief justice.

I concur in the conclusions reached upon the other points.