' SEARS et al. v. REDICK et al.

(Circuit Court of Appeals, Eighth Circuit. March 7, 1914.)

No. 3969.

*(Syllabus by the Court.)*

1. INJUNCTION (§ 128*)—GROUNDS — MAINTENANCE OF ACTION — SUFFICIENCY OF EVIDENCE.

In November, 1895, C. purchased a farm of 640 acres in Kansas, took the title to himself, and in December, 1895, and January, 1896, placed his wife's brother, E., who was incompetent to support his wife and family, upon it. The court below found that before closing the negotiations for the purchase a parol agreement was made between A., the daughter of E., who was a stenographer in Chicago, that C. should purchase the farm, take the title in his name, give E. and his wife a home thereon, the use of the farm and its income for their support during their lives, that A. should give up her position as stenographer in Chicago, remove to and live upon the farm with her parents, that they should manage the farm, and that she should give to them, to their needs and interests, her personal care and attention during their lives, and that at their deaths C. would convey the farm to her. The court also found that A. went to the farm in January or February, 1895, and has ever since lived there and faithfully performed her part of the contract, that her father died there in January, 1907, and that she is still performing her part of her contract and caring for her paralytic mother and the farm.

*Held*, the evidence sustains these findings, and the decree which enjoined the successors in interest of C. from maintaining an action of ejectment or any other claim against A. or the farm unless she fails to care for her mother was just and equitable.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 278; Dec. Dig. § 128.*]

2. FRAUDS, STATUTE OF (§ 129*)—PAROL CONTRACT TO CONVEY LAND—RIGHT TO ENFORCE.

The test of the familiar exception of a parol contract from the provision of the statute of frauds which makes a contract to convey land without a written contract or memorandum thereof signed by the party to be charged void is whether or not one of the parties to it has so changed his situation in reliance upon it that he cannot be restored to his original position and cannot be adequately compensated in damages at law so that its avoidance or breach will cause irreparable injury. If a parol contract complies with this test, it may and should be sustained and enforced in equity.                                         \

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 311, 314, 318–320, 322, 325, 326; Dec. Dig. § 129.*]

3. FRAUDS, STATUTE OF (§ 129*)—PAROL CONTRACT TO CONVEY LAND—VALIDITY.

Neither possession of the real estate nor improvements thereon under the parol contract are indispensable to its validity. They are some but not the only evidences of irreparable injury. There are others as effective, notably long and devoted service, and a radical change of occupation, location, and situation in order to render it, induced by the contract.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 287–292, 303, 306–308, 311, 314, 318–320, 322, 325, 326; Dec. Dig. § 129.*]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by Alice Redick and others against Nathaniel C. Sears and others. From judgment for plaintiffs, defendants appeal. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Louis E. Hart, of St. Louis, Mo. (A. M. Keene, of Ft. Scott, Kan., on the brief), for appellants.

G. H. Lamb, of Yates Center, Kan., and F. H. Atwood, of Chicago, Ill. (W. E. Hogueland, of Yates Center, Kan., on the brief), for appellees.

Before SANBORN and SMITH, Circuit Judges, and POPE, District Judge.

SANBORN, Circuit Judge. This is an appeal by the successors in interest of Robert R. Clark, who died in Chicago on August 8, 1907, from a decree which enjoins them from prosecuting an action of ejectment against Alice Redick, J. R. Redick, her husband, and Fannie L. Elston, her mother, and in effect quiets the title in Alice Redick to a farm of 640 acres in Woodson county, Kan.

[1] In 1895 Robert R. Clark was a successful business man, the owner of property of the value of several hundred thousand dollars. His wife, Blanche S. Clark, was a sister of Daniel T. Elston, the father of Alice Elston, who became Alice Redick by her marriage to J. R. Redick in 1899. Daniel T. Elston had inherited a large fortune which he had squandered. His habits were convivial, and he was living in Chicago with his wife and daughter in poverty. Clark was anxious to get him away from the temptations of city life and to keep him in the country. Some years earlier Elston had lived in Woodson county, Kan., and there were several unpaid judgments against him. In November, 1895, Clark went to that county, bought for $12,800 the farm in controversy, and took the deed of it to himself. In December, 1895, he made a written contract with Elston to the effect that he would employ him as foreman for $720 per annum, and that Elston had no interest in the farm, the personal property, or crops thereon, and no right to the possession of any part of the premises, except that he was granted the use of the house thereon to live in with his family, rent free during his employment. Clark recorded the deed and this contract, furnished stock and tools for the farm, and placed Elston and his wife upon it in December, 1895, and January, 1896, where Elston lived from that time until he died on January 4, 1907, and where Mrs. Elston is still living.

In November, 1895, Alice Elston was 21 years of age, on intimate terms with her uncle and aunt, Mr. and Mrs. Clark, and frequently a guest at their home. She was a stenographer by profession and was in the employment of Lyon & Healy, music dealers in the city of Chicago, on a regular salary. In January or February, 1896, she gave up her professional employment, removed from Chicago to the farm which Clark had bought, and from that time to this has devoted her life to the care of her father and mother and this farm. She kept the accounts and made the reports to Clark of the financial operations upon the farm during the earlier years of her life there, and during the later years corresponded with and informed him about it. Her father was an incompetent spendthrift, and she labored constantly and persistently to repress his desire to spend money and run in debt, to manage the farm economically, to obtain from it a living for her parents, and to

give personal care and attention to their wants. During the last three or four years of her father's life, he was ill, and during the last year he was helpless. She nursed and tenderly cared for him during this time, and when the evidence in this case closed she was, and for many months had been, nursing and caring for her mother who was a helpless paralytic. Why did she do this? She alleged in her complaint, the defendants denied, the master and the court found, that the reason was that before closing the negotiations for the purchase of this farm a parol agreement was made between Clark and Alice Elston that he should purchase the farm, take the title to it in his own name, give to her father and mother a home thereon, the use of the farm, and the income arising therefrom for their support during their lifetime, that Alice Elston should give up her professional position, remove from the city of Chicago to and live on the farm with her parents, that they should manage and operate the farm, that she should watch and care for the interests and needs of her parents and give to them her personal care and attention during their lifetimes, and that if she did so the farm should be hers at their death and Clark should convey it to her. The master, and the court also, found that Alice Elston, now Alice Redick, had performed her part of the contract up to the time of the decree, and that if she continued to take care of her mother until her death she would have completely performed it.

The defendants complain of these findings of fact on several grounds. It is contended that the evidence does not sustain the finding that the contract was made because no witness testified that he heard it made, only one testified that he heard Clark admit it in the hearing of Alice Redick, and the testimony of that witness was inconsistent with certain letters of Alice. Alice Redick did not testify to this contract with Mr. Clark because he died before her testimony was taken and she was disqualified to do so. The evidence regarding it consists of letters of Clark and Alice written at various times during the 11 years that he lived after her service was commenced, the proof of many facts and circumstances relating to the treatment of the farm by Clark, Elston, and Alice and to her control and care of the farm and of her parents, the testimony of one witness that he heard Clark acknowledge the agreement in her presence and hearing, the testimony of two other witnesses that he told them he had made the contract with her and the testimony of five other witnesses that he informed them that the farm was to be hers on the death of her parents. Every word of the evidence on this subject which appears in the record has been carefully read, digested, and compared. No material inconsistency with the testimony that Clark acknowledged the agreement in her presence is found in her letters. On the other hand, the situation and relation of the parties when the purchase of the farm was made, their evident desires and purposes, their acts, their letters, and the testimony of the living witnesses, converge with compelling force to establish the contract. The evidence on the subject is voluminous, and no good purpose would be served by reciting it. Suffice it to say it has convinced each member of this court, as it did the master and the court below, that Clark induced Alice Elston, now Alice Redick, to give up her employment as a stenog-

rapher and the comforts, opportunities, and pleasures of the city, and to devote the best 17 years of her life to the care of an impractical spendthrift and his wife on this farm in Kansas by the offer, which he made to her and which she accepted in 1895, that he would convey the farm to her at the death of her parents if she would live with and care for them upon it as long as they lived.

It is said that the terms of the agreement are so indefinite that it may not have effect, that it does not provide what duties Alice was to perform, whether or not she was to pay the taxes on the property, whether or not she was to keep the buildings insured, whether or not she was to make the reports to Clark about the farm. But the proved contract did provide that Alice agreed to give up her position in Chicago, to live with her parents on the farm, and to take care of them as long as they lived, and that Clark agreed that as soon as they died he would convey the farm to her, and these agreements were sufficiently clear and definite to constitute a valid contract. If the agreement proved required the performance of no other duties, the payment of no taxes, and of no premiums on insurance by her then the discharge of no other duties, the payment of no taxes or insurance conditioned her right to the farm.

It is insisted that Alice Redick has not performed her part of the agreement because she did not, and Clark did, pay the taxes on the farm until he died, and in the letter which she wrote to him in December, 1905, in explanation of the fact that she had taken in her own name a policy of insurance on a barn upon the farm this sentence is found:

"I told Mr. Culver (ex county treasurer), that I just as soon it was issued in your name as it was part of agreement that we keep up taxes and insurance after first five years, when he remarked, 'Why not take it in your own name, as your uncle has informed several while here buying the place that it was for me and that by so mentioning it in policy it would make it all right.' "

But that statement is entirely too casual and indefinite to warrant a finding that it was a condition of Clark's contract with Alice Elston to convey the farm to her that she should pay the taxes on it after 1900, and it is not at all probable that it was so. He did not give to her the entire control of the money he furnished or the income derived from the farm, but left that rather to her father and relied upon her persuasion and influence over the father and her reports to him to prevent their dissipation. He made a separate written contract with her father relative to the personal property and the income to which she was not a party, and her contract was separate from that with her father and its subject was her services and her compensation, so that even if there was an agreement about the taxes it must have been dehors the agreement here in controversy, for it is improbable that Clark put this young woman on this farm without funds or the control of them and exacted of her the devotion of the best years of her life to the care of her parents whom he undertook to support, and exacted of her an agreement to pay the taxes on the farm as a part of the contract whereby he agreed to convey it to her on the death of her father and mother.

[2] Counsel for the defendants argue that the contract with Alice Redick is void under the statute of frauds because it was not in writing signed by Clark (General Statutes Kansas 1909, c. 45, § 6 [section 3838]), because she never had open and notorious possession of the farm under her contract exclusive of the possession of her father and mother, and because the evidence fails to prove that the improvements which, to the value of $1,750, the master found she had put upon the farm, were made after the death in January, 1907, of her father. Neither of these facts, however, is fatal to the contract. Counsel concede that there is an established exception to the statute which requires a writing signed by the party to be charged to sustain an agreement to convey land, under which a parol agreement, which has been partially performed by one of the parties, may be enforced in equity. But they insist that the parol agreement in this case has not been brought under the exception because Alice Redick's possession was not exclusive of her parents and because the time when she put the improvements on the place is not clearly established. Let us see.

The principle on which the exception to the statute of frauds which makes a written contract essential to a valid agreement to convey land rests, is that a court of equity will not permit the use of the statute to perpetrate a practical fraud, and the test of the exception is the answer to the question: Would the application of the statute to the parol contract inflict irreparable injury upon one who has so changed his situation in reliance upon it that he cannot be restored to his original position and cannot be adequately compensated in damages at law? If it would, the contract may be enforced in equity; if it would not, it may not be sustained.

[3] Possession of the real estate under the parol contract and improvements made thereon by the vendee are evidences, but they are neither the only nor the indispensable evidences, of such a change of situation, or of such irreparable injury. There are others as effective, and there is none more so; none that appeals to the conscience of a chancellor with more persuasive, more compelling power, than the fact that a young woman has been induced by a parol agreement to convey a tract of land to her on the death of her parents, to give up a professional position, the opportunities, comforts, and pleasures of life in a city, to live with and care for her parents and the farm on which they reside during the best 17 years of her life and during the old age, helplessness, and last sickness of her father and her mother. The value of such services cannot be satisfactorily measured in money, and, if they could be, the recovery of a large part of them would be barred by the statute of limitations   Alice Redick cannot be restored to the position she was induced to surrender by the agreement to convey this land, to youth and to the opportunities, comforts, and pleasures she might have derived from the 17 years of her service. No adequate relief can be granted at law to a vendee for the avoidance of a parol contract to convey land under such circumstances. Its repudiation unavoidably inflicts irreparable injury and perpetrates a real fraud upon the vendee, and neither exclusive possession of the farm nor improvements made by her upon it are indispensable to in-

duce a court of chancery to enforce it. And this is the case that Alice Redick presents to this court. Schoonover v. Schoonover, 86 Kan. 487, 121 Pac. 485, 486, 38 L. R. A. (N. S.) 752; Svanburg v. Fosseen, 75 Minn. 350, 358, 361, 78 N. W. 4, 43 L. R. A. 427, 74 Am. St. Rep. 490, and cases there cited; Baldridge v. Centgraf, 82 Kan. 240, 244, 108 Pac. 83; Flanigan v. Waters, 57 Kan. 18, 21, 45 Pac. 56; Bichel v. Oliver, 77 Kan. 696, 700, 701, 95 Pac. 396; Edwards v. Fry, 9 Kan. 417; Baldwin v. Baldwin, 73 Kan. 39, 43, 84 Pac. 568, 4 L. R. A. (N. S.) 957.

Moreover, the proof is that Alice Redick from 1895 to the present time lived upon the farm and had all the possession of it that was consistent with the comfort of her parents, the performance of her part of the contract she had made with Clark, and the accomplishment of the object which he sought by means of his agreement with her, and that she made valuable improvements on the farm at various times while she was living upon it. On principle, in reason, and under the authorities her case falls far within the established exception to the declaration of the statute of frauds that a contract for the conveyance of land not in writing and signed by the party to be charged is void.

Finally, counsel invoke the familiar maxims that, "He who comes into equity must come with clean hands," and, "He who has done iniquity cannot have equity," and argue that a court of equity should deny her all relief because she aided in a scheme to defraud the creditors of her father. Counsel rest this argument upon these facts: When Clark bought the farm in 1895, there were unpaid judgments against Elston. Clark took and recorded the deed of it to himself and made and recorded the agreement with Elston to the effect that all the income of the farm and the personal property on it should be Clark's, that Elston should have no pecuniary interest in it, and that Elston should be Clark's foreman on a salary of $720 per annum. This agreement was made and recorded by Clark and Elston to prevent Elston's creditors from seizing the property and applying it to the payment of his debts, and, while Alice Elston was not a party to this agreement and had no actual knowledge of its terms until years after it was made, she knew before she went to Kansas that some arrangement had been made or would be made between Clark and her father to protect the farm and the personal property from her father's creditors, and after she went to Kansas she made reports to Clark for a few years of the receipts and expenditures on account of the farm and the personal property thereon with the understanding that they were made for the purpose of protecting the property from her father's creditors. Three witnesses testified that about the time Clark bought the farm he told them that Elston had about $15,000 coming to him from the estate of his mother and that he (Clark) was going to buy a ranch with it at her request and have it deeded to himself because Elston was incompetent and untrustworthy. These are all the facts, and this is all the evidence upon which the defendants rely to secure a finding that Alice Redick was guilty of the iniquity of aiding to defraud the creditors of her father. There is one unanswerable reason why they fail to establish that fact. It is that there is no evidence that Alice Redick ever knew

or heard, before this suit was commenced in 1912, of the fact, if it be a fact, that the money which Clark invested in the farm and the personal property was money coming to Elston from his mother's estate. The letters between her and Clark, and there are many of them, give no inkling of such a fact, but refer to and treat the money with which he bought the property as Clark's money, and it was a just, lawful, and wise precaution for her to do all in her power to protect this property bought, as she believed, with the money of Clark to provide a living for her incompetent father and his wife and a compensation for her long service, from the creditors of her father who had no claim upon it either at law or in equity. Moreover, she never made nor joined in any contract to defeat those creditors. There is no proof of any such intent or purpose on her part in the making of her contract with Clark. That was a mere agreement that she would render the service described in it and that on the death of her parents Clark would convey to her the farm. Under that contract Clark was bound to keep or have the farm clear of all legal or equitable claims of creditors of Elston and of all other strangers so that he could vest the title in her as he agreed. That contract was separate from Clark's agreement with Elston, and Alice Redick was not a party to that agreement and did not know its contents until long after it was made.

The truth is there is nothing in the record to sustain the claim that she was ever guilty of the intention or of the attempt to delay or defraud the creditors of her father from enforcing any equitable or legal claim they may have had against him or any legal or equitable interest in property which her father acquired or possessed, and the result is that the decree below was sustained by the evidence, was equitable and just, and it must be affirmed.

It is so ordered.