McINTYRE ET AL., APPELLANTS, v. DAWES, RESPONDENT.

(No. 5,525.)

(Submitted September 17, 1924. Decided October 20, 1924.)

[229 Pac. 846.]

*Fraud—Complaint — Sufficiency — Statute of Frauds — Part Performance—Waiver of Defense.*

Fraud—When Action Lies.

1. While the mere making of a promise which the promisor fails or refuses to perform does not ordinarily constitute actionable fraud, where by reason of the promise made with an intention not to perform it but to deceive the promisee and induce him to act where he would not have acted, and he acts so changing his position that it is impossible to place him *in statu quo,* an action for fraud lies.

Same—Complaint—Sufficiency.

2. Complaint alleging, in substance, that plaintiff, a tenant of defendant under a lease of business property which was about to expire, had obtained an option on another building suitable for his purposes which option he surrendered upon the promise of defendant that he would renew plaintiff's lease; that upon expiration of the lease defendant refused renewal; that the promise was made with an intention not to perform it and to induce plaintiff to alter his position to his injury which he did, *etc., held* sufficient as against a general demurrer.

Same—Future Acts may Constitute Fraud.

3. The rule that in order for false representations to be the basis of an action for fraud they must have been relative to facts theretofore or presently existing and not to those based upon promises as to future acts has no application to a promise accompanied with an intention not to perform it, for the purpose of deceiving the promisee and inducing him to act upon it to his injury.

Statute of Frauds—When Contract Presumed in Writing.

4. In the absence of a showing to the contrary, a contract required to be in writing will be presumed to have been so.

Same—Evidence of Void Oral Agreement not Admissible.

5. Unless a contract void under the statute of frauds because not in writing is removed from the operation of the statute by an exception, it is not only unenforceable but evidence of it may not be received.

Same—Part Performance—What Constitutes.

6. Part performance which will avoid the statute of frauds may consist of an act done in the performance of the contract which puts the party performing it in such a situation that the nonenforcement of the agreement would be a fraud upon him.

Same.

7. *Held,* that plaintiff's acts in relinquishing his option on a new business location on the oral promise of the defendant, his landlord, that if he would do so he (defendant) would renew the lease plaintiff then held for an additional three years, a provision which rendered the promise void under the statute of frauds, was such

a part performance under the above rule (par. 6) as removed the agreement from the operation of the statute.

Same—Waiver of Defense.

8. *Quaere:* Since the defense of the statute of frauds may be waived, is it waived by a general demurrer to the complaint?

*Appeal from District Court, Gallatin County; B. B. Law, Judge.*

ACTION by C. A. McIntyre and another against Robert S. Dawes. Judgment for defendant and plaintiffs appeal. Reversed and remanded.

*Mr. H. M. Stewart* and *Mr. W. S. Hartman,* for Appellants, submitted a brief; *Mr. Hartman* argued the cause orally.

Citing: 12 R. C. L. 257; *Equity Co-operative Assn.* v. *Milling Co.,* 63 Mont. 26, 206 Pac. 349; *Kelly* v. *Ellis,* 39 Mont. 597, 104 Pac. 873; *Cerny* v. *Paxton,* 78 Neb. 134, 10 L. R. A. (n. s.) 640, note, p. 646, 110 N. W. 882; *Blackburn* v. *Morrison,* 29 Okl. 510, Ann. Cas. 1913A, 523, 118 Pac. 402; *Adams* v. *Schiffer,* 11 Colo. 15, 7 Am. St. Rep. 202, 17 Pac. 21; *Sweet* v. *Kimball,* 166 Mass. 332, 55 Am. St. Rep. 406, 44 N. E. 243; *Palladine* v. *Imperial Valley F. L. Assn.,* 65 Cal. App. 727. 225 Pac. 291; *Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601.

*Mr. Geo. Y. Patten,* for Respondent, submitted a brief and argued the cause orally.

Mere expressions of opinion, however erroneous, misrepresentations as to what will be done in the future or statements of intention, do not constitute fraud. (*Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601; *Citizens State Bank* v. *Snelling,* 55 Mont. 476, 178 Pac. 744; *Field* v. *Siegel,* 99 Wis. 605, 47 L. R. A. 433, 75 N. W. 397.) In the case of *Conant* v. *Terre Haute Nat. State Bank,* 121 Ind. 323, 22 N. E. 250, it is said: "Even statements of fact do not constitute fraud when they relate solely to the future." In *Brison* v. *Brison,* 75 Cal. 525, 7 Am. St. Rep. 189, 17 Pac. 689, it is said: "Mere failure to

fulfill a promise is not fraud.'' (See, also, *Conoway* v. *New-man Mill etc. Co.,* 91 Ark. 324, 121 S. W. 353; *Polscik* v. *Korff,* 180 N. Y. Supp. 401.)

An examination of the cases will show that actionable deceit is essentially a false representation or broken promise made by one to another which constitutes a breach of duty in connection with some relationship, fiduciary or contractual. While it may arise outside of a contract, yet there must be a relationship between the parties, fiduciary or contractual, out of which it grows. (*Kelly* v. *Ellis,* 39 Mont. 597, 104 Pac. 873; *Newman* v. *Smith,* 77 Cal. 22, 18 Pac. 791; *Hays* v. *Gloster,* 88 Cal. 560, 26 Pac. 367; *Langley* v. *Rodriguez,* 122 Cal. 580, 68 Am. St. Rep. 70, 55 Pac. 406.)

Sᴛᴀᴛᴇᴍᴇɴᴛ ᴏꜰ ᴛʜᴇ Cᴀsᴇ, ʙʏ ᴛʜᴇ Jᴜsᴛɪᴄᴇ Dᴇʟɪᴠᴇʀɪɴɢ ᴛʜᴇ
Oᴘɪɴɪᴏɴ.

Plaintiffs have appealed from a judgment in favor of defendant following the court's action in sustaining a demurrer to the amended complaint, plaintiffs having declined to plead further.

From this complaint it appears that the plaintiffs, as partners, and their predecessors in interest, continuously from July 31, 1917, until July 31, 1922, owned and operated a restaurant known as the Club Café, in a building leased from the defendant, situated on the south side of Main Street in the city of Bozeman. By reason of the successful conduct of the business by plaintiffs and their predecessors in interest, the Club Café had become very popular and its business large and lucrative and the goodwill thereof very valuable, all of which was well known to defendant. About the 1st of January, 1922, some six months before their lease on defendant's building by its terms would expire, the plaintiffs obtained an option to lease a similar building upon the same side of Main Street and but two doors west of the building where the Club Café was being operated, with the intention of removing their restaurant business thereto, in the event they should not be

71 Mont.—24

able to secure from defendant a new lease of his premises upon the expiration of the one under which they were operating. The building upon which they had the option was the only one in the city favorably located for the conduct of their business, which was available in case they had to remove from the defendant's building. Under the terms of the option they would have been obliged to pay but $125 per month as rental.

· Thereupon they advised the defendant that they had secured this option on the other building, that it was the only building in the city favorably located for the conduct of their business which was available for rental, and that it was necessary for the continued successful conduct of their business that they should exercise their option to lease the building and make the necessary preparations for the removal of the restaurant, unless satisfactory arrangements could be made between themselves and the defendant for a new lease upon the defendant's premises, to date from July 31, 1922, which was the time of the expiration of their lease; "and thereupon the defendant, well knowing the premises, and wickedly intending to injure the plaintiffs, and destroy their said business, represented to and promised the plaintiffs that if they would surrender their said option upon said building and remain on the said premises of the defendant that he, said defendant, would execute a new lease for said premises to them, the said plaintiffs, to date from July 31, 1922, to continue for the period of three years, at a rental of $175 per month." The plaintiffs believed and relied upon the said promise, agreement and representations of the defendant and in good faith so believing and relying thereupon surrendered the option which they had upon the other building and canceled the same, and the owner of that building immediately leased it to other persons who ever since have continued to and now occupy the same. The plaintiffs thereupon continued their business in the building leased from defendant, but on or about the 1st of July, 1922, he suddenly announced to them that he would not execute the new lease but instead served written notice upon them to sur-

render the premises at the date of the expiration of the lease. They say the promise, representations and agreement of the defendant to renew the lease were deliberately, wantonly and maliciously made by him without any intent on his part of performing the same but with the wrongful and fraudulent purpose and intent of deceiving and misleading them into the surrender of their option, and of injuring and destroying their business and preventing them from obtaining a building favorably located for the conduct of their business, and of driving them out of the restaurant business in the city and of acquiring for himself and others the said location, goodwill and business of the plaintiffs. When the defendant notified them that he would not comply with his promise and agreement to renew the lease they were the owners of the equipment, furniture, fixtures, partitions and so forth, then in use in the conduct of their restaurant in the defendant's building, which property they had acquired at an expense of approximately $10,000, and which was worth that sum for use in their business, but when defendant announced his intention not to comply with his promise and notified them to quit possession they were compelled either to sacrifice and abandon their restaurant business "which they had built up with so great labor and expense as aforesaid, and sell and dispose of their said equipment, fixtures, furniture, partitions, *etc.,* at a very great loss to themselves, and go out of the restaurant business in the city of Bozeman entirely," or to obtain another location in the city and remove their business and property thereto for the purpose of continuing in the restaurant business. After consultation between themselves and business friends, they, in good faith, determined that it would be less disadvantageous to them to remove and continue the business than it would be to discontinue and abandon it. The only building in the city at all suitable for their business which it was possible for them to obtain was on the north side of Main Street, diagonally across the street from and east of the building of the defendant, and

this they were able to secure only by purchasing the lease of the occupant at an expense of $3,500, which amount they were compelled to and did pay therefore, and they were also required to pay $45 more per month in rental than they would have been obliged to pay had they leased the building upon which they had the option. So on or about the 31st of July, 1922, they removed their business, restaurant and property to the new location.

Then follow allegations concerning loss of business and the damage which fell to the plaintiffs because of their enforced change in location, which are not necessary to be stated now. Plaintiffs again allege that the defendant made his promise to grant them the new lease with the deliberate intent and purpose of not performing the same and with the intent and purpose of inducing plaintiffs to rely thereupon until such time as it would be impossible for them to secure another building favorably located for the conduct of their business, "and thereupon, of driving them out of the restaurant business in said city, and securing the said business and the goodwill thereof, so established and built up by plaintiffs, for himself and others in whom he was interested"; that the defendant was well acquainted with the location and value of business properties in Bozeman for business and restaurant purposes, and well knew and believed at the time he made the promise to renew the lease that if plaintiffs surrendered their option as aforesaid, it would be nearly, if not quite, impossible for them to secure another location favorably situated for the conduct of their business in Bozeman; and the defendant made the said promise with the intent and purpose that plaintiffs should rely upon it to their injury and damage.

The demurrer to the complaint assigned several grounds of objection, but the only one relied upon by counsel for defendant in this court is that the complaint does not state facts sufficient to constitute a cause of action.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

In the language of counsel for plaintiffs this is an action for [1–3] damages sustained by plaintiffs by reason of their reliance upon a promise made by defendant without any intention of performing it at the time that he made it, whereby defendant willfully deceived plaintiffs with the intent to induce them to alter their position to their injury, which they, by reason of believing defendant's promise, did do to their damage.

The action, if maintainable at all, rests upon these statutory provisions:

"Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights." (Sec. 7573, Rev. Codes 1921.)

"One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." (Sec. 7574, *Id.*)

"A deceit, within the meaning of the last section, is either: * * * (4) A promise, made without any intention of performing it." (Sec. 7575, *Id.*)

Proceeding upon the postulate that the quoted provisions are merely declaratory of common-law rules, to which respective counsel agree, it is contended in behalf of defendant that upon the facts stated plaintiffs have not any right of action. Defendant's counsel says: "Do these statutes make one liable for damages for deceiving another, in the absence of any duty to speak, and in the absence of any relationship, contractual or otherwise? This question overlooks two important points: The first, that one may commit a breach of duty in deceiving another by speech; the second, that if a person "without contract"—irrespective of the existence of a contractual relation between him and another—injures the person or property of the other, or infringes upon his rights, he does the other a wrong. For every wrong there is a remedy. (Sec. 8752, Rev. Codes 1921.)

It is also urged by counsel for defendant that "misrepresentation as to what will be done in the future, or statements of intention, do not constitute fraud." It is true, generally speaking, that in order for false representations to be the basis of fraud, they must be relative to facts theretofore or presently existing and not to those based upon promises as to future acts. But this rule does not apply to a promise accompanied with an intention not to perform it, made for the purpose of deceiving the promisee and inducing him to act where otherwise he would not. (*Blackburn* v. *Morrison*, 29 Okl. 510, Ann. Cas. 1913A, 523, 118 Pac. 402; *Goodwin* v. *Horne*, 60 N. H. 485; 1 Bigelow on Fraud, 485.)

Speaking of actionable fraud Lord Bowen in *Edington* v. *Fitzmaurice*, 29 L. R. Ch. Div. 459, observed: "There must be a misrepresentation of an existing fact: but the state of a man's mind is as much a fact as the state of his digestion. It is true that it is difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained, it is as much a fact as anything else. A misrepresentation as to the state of a man's mind is, therefore, a misstatement of a fact." (*Hill* v. *Gettys*, 135 N. C. 373, 47 S. E. 449.)

A promise to do an act in the future which is the medium of a deception and which the promisor has no present intention of performing will support an action of deceit. (*Sallies* v. *Johnson*, 85 Conn. 77, Ann. Cas. 1913A, 386, 81 Atl. 974; *Olson* v. *Smith*, 116 Minn. 430, 134 N. W. 117; *Rogers* v. *Virginia-Carolina Chemical Co.*, 149 Fed. 1, 78 C. C. A. 615.)

In *Kelly* v. *Ellis*, 39 Mont. 597, 104 Pac. 873, this court said: "If the complaint had charged that the defendants entered into the written contract of April 17 without any intention of performing their part of it, or without any intention on their part of performing any one or more of the provisions therein made by them relating to a material matter, then, in either of those events, the plaintiff would show himself entitled to damages for the deceit." (And see *Buhler* v. *Loftus*, 53 Mont. 546, 165 Pac. 601.)

The mere making of a promise which the promisor fails or refuses to perform does not ordinarily constitute actionable fraud (12 Cal. Jur. 734), but where by reason of the promise one has been induced to change his condition and relations so that it is impossible to place him *in statu quo,* a failure to fulfill the promise works a fraud which may entitle him to relief (*Id.,* 735.)

Of course, the breach of an honest promise relating to something to be done in the future cannot be ground for an action for fraudulent deceit; but there is a wide distinction between the nonperformance of an honest promise and one made in bad faith and without any intention at the time of making it to perform it. (*McLean* v. *Southwestern Assur. Co.,* 61 Okl. 79, 159 Pac. 660.)

Under the rule announced in *Sweetland* v. *Barrett,* 4 Mont. [4, 5] 217, 1 Pac. 745, *Mayger* v. *Cruse,* 5 Mont. 485, 6 Pac. 333, *Hefferlin* v. *Karlman,* 29 Mont. 139, 74 Pac. 201, and *Blankenship* v. *Decker,* 34 Mont. 292, 85 Pac. 1035, in the absence of a showing to the contrary, a contract required to be in writing will be presumed to be. However, in the instant case it is not only inferable from the complaint that the contract was an oral one but the case has been argued and submitted upon that theory in this court. So it is urged that defendant's promise to renew the lease for a period of three years was invalid under the statute of frauds, which provides that an agreement for the leasing of real property for a longer period than one year is invalid unless the same or some note or memorandum thereof be in writing and subscribed by the party to be charged. (Sec. 7519, subd. 5, Rev. Codes 1921.) Such being the case the contract, unless removed from the operation of the statute by an exception, was not only invalid and unenforceable but evidence of its contents may not be received. (Sec. 10613, Rev. Codes 1921; *Dreidlein* v. *Manger,* 69 Mont. 155, 220 Pac. 1107.)

The general rule is that if one in order to prove his cause of action is driven to rely upon proving a contract barred by

the provisions of the statute of frauds, he cannot maintain his action. Upon the facts pleaded may plaintiffs prove their case notwithstanding the statute? The answer must be in the affirmative, for by the allegations of the complaint there was performance by plaintiffs of an essential part of the agreement.

The pleading is that the defendant promised plaintiffs that [6, 7] if they would surrender their option and remain on the premises of the defendant he would execute a new lease to them. They did surrender their option because of his promise and remained in his building until he caused them to remove therefrom. Part performance which will avoid the statute may consist of an act done in performance of the contract which puts the party performing it in such a situation that the nonenforcement of the agreement would be a fraud upon him. (*Armstrong* v. *Kattenhorn,* 11 Ohio, 265; *Eastburn* v. *Wheeler,* 23 Ind. 305.) The underlying principle for this rule is stated by Lord Redesdale in *Bond* v. *Hopkins,* 1 S. & L. (Irish Ch. Rep.) 433, as follows: "The statute of frauds says that no action or suit shall be maintained on an agreement relating to lands which is not in writing, signed by the party to be charged therewith; and yet the court is in the daily habit of relieving where the party seeking the relief has been put into a situation which makes it against conscience in the other party to insist on a want of writing so signed, as a bar to his relief." (*Wood* v. *Rabe,* 96 N. Y. 414, 48 Am. Rep. 640.)

The application of the principle would seem to be clear in a case where one in reliance upon an oral contract induced by the fraud of another has performed the contract on his part and thereby has changed his situation to his injury. (See, generally, *Halligan* v. *Frey,* 161 Iowa, 185, 49 L. R. A. (n. s.) 112, 141 N. W. 944; *McKinley* v. *Hessen,* 135 App. Div. 832, 120 N. Y. Supp. 257; *Sears* v. *Redick,* 211 Fed. 856, 128 C. C. A. 234; *Wetmore* v. *White,* 2 Caines Cas. (N. Y.) 87; *Ryan* v. *Dox,* 34 N. Y. 307, 90 Am. Dec. 696; *Martin* v. *Martin,* 170 Ill. 639, 62 Am. St. Rep. 411, 48 N. E. 924; *Stone*

*Mountain Granite Corp.* v. *Patrick,* 19 Ga. App. 269, 91 S. E. 286; *McLeod* v. *Hendry,* 126 Ga. 167, 54 S. E. 949; *Atchison T. & S. F. Ry. Co.* v. *Hurley,* 153 Fed. 503, 82 C. C. A. 453.)

In *Jennings & Son* v. *Miller,* 48 Or. 201, 85 Pac. 517, a case in some respects very similar to this, it was a part of the alleged contract of leasing that the plaintiff should surrender its option. The court said: "An act of part performance to take a case out of the statute of frauds must be done in pursuance of, or in execution of, the contract alleged, or must obviously be related to or connected therewith, and must be referable solely to such contract." The facts pleaded here come fully within the quoted language.

Depending upon the briefs and arguments of counsel we [8] have discussed this case upon the theory that the applicability of the statute of frauds to the facts presented may be raised by general demurrer. But we do not overlook the fact that the statute may be waived. (*Christiansen* v. *Aldrich,* 30 Mont. 446, 76 Pac. 1007; *Mitchell* v. *Henderson,* 37 Mont. 515, 97 Pac. 942.)

The judgment is reversed and the cause is remanded to the district court of Gallatin county, with directions to overrule the demurrer.

*Reversed and remanded.*

Associate Justices Rankin, Holloway, Galen and Stark concur.