STATE EX REL. RED LODGE-ROSEBUD IRRIGATION DISTRICT, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 5,860.)

(Submitted December 1, 1925. Decided December 23, 1925.)

[242 Pac. 431.]

*Supervisory Control — Irrigation Districts — Unlawful Transfer of Money from Construction Fund — Mandamus — Intervention by District — Leave to File Complaint — Proper Refusal.*

Supervisory Control—Intervention—Refusal of Leave to File Complaint—Writ Lies to Review.

1. Since an appeal does not lie from an order denying a motion for leave to file a complaint in intervention, and the unsuccessful movant, not being a party to the action, cannot appeal from the final judg-

ment entered therein, he may have the order reviewed on application to the supreme court for writ of supervisory control.

*Mandamus*—General Damages—Issue not Triable in Proceeding.
2. An issue on general damages is not triable in a *mandamus* proceeding.

Irrigation Districts—Unlawful Transfer of Money from Construction Fund —Payment of Warrants—*Mandamus* to County Treasurer—Intervention by District—Proper Refusal of Leave to File Complaint.
3. Under sections 3985 and 3986, Revised Codes of 1921, the board of directors of an irrigation district has no power to transfer moneys in the construction fund to any other fund, except where a surplus remains upon completion of the project. After warrants for work done had been issued to the contractor, the directors ordered a transfer to certain other funds and directed the county treasurer not to pay the warrants but to register them. The contractor brought action against the treasurer to compel their payment, whereupon the district asked leave to file a complaint in intervention setting forth its reasons for ordering the transfer. *Held,* that the transfer having been unlawful the status of the construction fund was not changed by it, and payment of the warrants not having been revoked, the complaint did not state facts sufficient to entitle the district to intervene, and that refusal to permit its filing was proper.

[1]. Appeal and Error, 3 C. J., sec. 304, p. 477, n. 79; sec. 500, p. 639, n. 15.
[2] *Mandamus,* 38 C. J., sec. 680, p. 919, n. 27.
[3] *Mandamus,* 38 C. J., sec. 560, p. 857, n. 41½.  Waters, 40 Cyc., p. 821, n. 23 New.

Original proceeding by the State of Montana, on the relation of the Red Lodge-Rosebud Irrigation District, for a writ of supervisory control to annul an order of the District Court of the Thirteenth Judicial District in and for the County of Carbon, and O. F. Goddard, a Judge thereof, refusing to grant a petition for leave to intervene. Proceeding dismissed.

*Mr. John G. Skinner* and *Mr. Sterling M. Wood,* for Relator, submitted a brief; *Mr. Wood* argued the cause orally.

Relator herein had the right to intervene in the *mandamus* proceeding, under section 3977, Revised Codes of 1921. The authorities generally establish that intervention is frequently permitted and recognized as a right in *mandamus* proceedings. (36 C. J., Mandamus, par. 560, 856, with the authorities mentioned under notes 33 and 34.) In *Rinehart & Dennis Co.* v. *McArthur,* 123 Va. 556, 96 S. E. 829, 833, the court, in a *mandamus* proceeding, says: "If, as in the instant case,

the aefendant is the mere custodian of the fund, in which he claims no interest, but which is in good faith claimed by another, we can see no good reason, under the liberal provisions of the new procedure, why he should not be admitted as a party and the rights of the parties thus speedily determined in the *mandamus* proceeding." (See, also, *Stack* v. *Coyle,* 59 Mont. 444, 450; 197 Pac. 747; *Moreland* v. *Monarch Min. & Mill. Co.,* 55 Mont. 419, 178 Pac. 175.)

The irrigation district had the right to revoke its warrants drawn upon the county treasurer. The following authorities clearly establish that warrants or orders of a public body upon the custodian of its funds may be revoked or rescinded at any time before payment is made: *State ex rel. First Nat. Bank of York* v. *Cook, Treasurer,* 43 Neb. 318, 61 N. W. 693; *Murphy* v. *Reeder Town Treasurer,* 56 Mich. 505, 23 N. W. 197; *Harrison County* v. *Ogden,* 165 Iowa, 325, 145 N. W. 681; *Tucker* v. *Justices,* 35 N. C. 434; *Dey* v. *Lee,* 4 Jones (N. C.), 238, 49 N. C. 238; *People* v. *Klokke,* 92 Ill. 134; *State* v. *Bowman,* 66 S. C. 140, 44 S. E. 569; *Abernathy* v. *Phifer,* 84 N. C. 711, 712; *Frankl* v. *Bailey,* 31 Or. 285, 50 Pac. 186; *People* v. *Manistee Co., Supervisors,* 33 Mich. 497; *Van Akin* v. *Dunn,* 117 Mich. 421, 75 N. W. 938; *Fletcher* v. *Renfroe,* 56 Ga. 674.

The following authorities, as well as those already cited, clearly establish the right of the district to require the county treasurer to hold the moneys belonging to the district and not to pay them out on the warrants which Haley holds. These funds are properly held by the treasurer in her capacity of custodian of the funds of the district as security under section 37 of the specifications: *Danville Bridge Co.* v. *Pomroy,* 15 Pa. 151; *Funk* v. *House* (Tex. Civ. App.), 168 S. W. 481; *Dempsey* v. *Schwacker,* 140 Mo. 680, 38 S. W. 954, 41 S. W. 1100; *Steele* v. *McBurney,* 96 Iowa, 449, 65 N. W. 332; *Luthy* v. *Woods,* 6 Mo. App. 67; *Carlisle* v. *Spain,* 147 Mich. 158, 110 N. W. 532; 9 C. J. 705.

As alleged in paragraph 21 of the complaint in intervention, the warrants involved were issued to Haley upon his representation that he would complete the construction work, whereas he has actually abandoned the contract without complete performance. This has resulted in heavy damage to the district, which it should have an opportunity to offset against Haley's present claims under the warrants involved. His right, as relator in the *mandamus* proceeding, to recover anything upon his warrants is thus doubtful, to say the least, and in such case the writ should not issue. (See High on Extraordinary Legal Remedies, 3d ed., par. 32; 38 C. J., pp. 550, 558.)

Even if it be admitted that it was a wrongful act on the part of all concerned to make the transfer of funds covered by the resolution of the directors of October 5, 1925, still the fact exists that the transfer was actually made by the county treasurer so that there were thus no funds in her hands with which to pay the Haley warrants at the time of the petition for a writ of mandate. This condition, when pleaded, is a complete defense in a *mandamus* proceeding. (*Bates* v. *Porter*, 74 Cal. 224, 15 Pac. 732; *Duval County Commrs.* v. *Jacksonville*, 36 Fla. 196, 29 L. R. A. 416, 18 South. 339). That an action for damages and not *mandamus* will lie under such circumstances is the rule of *Quaker City Nat. Bank* v. *Tacoma*, 27 Wash. 259, 67 Pac. 710.

*Mr. George W. Pierson*, for Respondents, submitted a brief and argued the cause orally.

This court has held an appeal will not lie from an order denying a party the right to intervene, but this does not mean the order cannot be reviewed on a proper appeal. There are numerous nonappealable orders which can be reviewed on appeal from the judgment, and particularly orders in reference to pleadings of which the order complained of is one. (Rev. Codes, sec. 9750.) If the relator had any

right to intervene, then such interest does not differ from the interest of a creditor or heir of a deceased person, or a creditor of a debtor whose property is in the hands of a receiver.

The party aggrieved is one interested, one who is materially affected by the decree, and if he took proper course to secure his rights he is a party aggrieved and entitled to prosecute an appeal. (*In re Estate of Murphy,* 57 Mont. 273, 188 Pac. 146.) One who has been denied the right to intervene may appeal from the judgment. (*Dollenmayer* v. *Pryor,* 150 Cal. 1, 3, 87 Pac. 616; *In re Meade Estate,* 5 Cal. Unrep. 678, 49 Pac. 5.) Any person interested in a fund of which the court has directed the receiver to pay himself may appeal. (*Grant* v. *Los Angeles Pac. R. Co.,* 116 Cal. 71, 47 Pac. 872.) The writ of supervisory control will only issue when the remedy by appeal cannot afford adequate relief and gross injustice is threatened as the result of rulings sought to be annulled. (*In re Weston,* 28 Mont. 207, 72 Pac. 512; *State* v. *District Court,* 50 Mont. 428, 147 Pac. 612; *State* v. *District Court,* 62 Mont. 60, 203 Pac. 860; *State* v. *District Court,* 59 Mont. 505, 197 Pac. 741.)

The right to interplead in *mandamus* proceedings rests wholly upon statute and does not exist at common law. (High on Extraordinary Legal Remedies, 3d ed., sec. 450A.) The general provision of the statute allowing parties interested to intervene has no application. (*State* v. *Burkhardt,* 59 Mo. 75; *Winstanley* v. *People,* 92 Ill. 402; *People* v. *Myers,* 50 Hun, 479, 3 N. Y. Supp. 365; *Hewitt* v. *Craig,* 86 Ky. 23, 5 S. W. 280; *State* v. *Cook* (Mo. App.), 201 S. W. 361.)

Only parties who originally could properly be made defendant can intervene in *mandamus* proceedings. (High on Extraordinary Legal Remedies, 3d ed., sec. 450A; *State* v. *Burkhardt, supra; Harwood* v. *Quinby,* 44 Iowa, 385.) Neither can one intervene as relator. (*Hewitt* v. *Craig,* 86 Ky. 23, 5 S. W. 280.) Every issue which could be properly tendered

by the complaint in intervention was raised by the answer of the defendant and the district should not have been allowed to intervene although its expenditure of money might be affected by the decree. (*People* v. *Myers,* 50 Hun, 479, 3 N. Y. Supp. 365.)

The complaint in intervention tendered an issue. of damages in favor of the Red Lodge-Rosebud Irrigation District against the relator, J. S. Haley. Issues of general damages are not triable in *mandamus.* (*Bailey* v. *Edwards,* 47 Mont. 363, 133 Pac. 1095; *State* v. *Cocking,* 66 Mont. 169, 28 A. L. R. 772, 213 Pac. 594.)

The complaint not only fails to state a cause of action for damages, which in any event is not pleadable as an offset in *mandamus,* but it fails to show any excuse in law for failure to pay the warrants. It appears the moneys are now in the construction fund. (*State ex rel. City of Cut Bank* v. *McNamer,* 62 Mont. 490, 205 Pac. 951; *First Nat. Bank* v. *Arthur,* 12 Colo. App. 90, 54 Pac. 1107; *Yellowstone County* v. *First Tr. & Sav. Bank,* 46 Mont. 439, 128 Pac. 596; *American Metal Ceiling Co.* v. *New Hyde Park Fire Dist.,* 91 Misc. Rep. 236, 154 N. Y. Supp. 661; *State* v. *Irwin,* 74 Wash. 589, 134 Pac. 484, 135 Pac. 472.) The issuance of the warrants was an admission of the claims and is in effect a judgment in the absence of fraud. (*Greely* v. *Cascade Co.,* 22 Mont. 580, 57 Pac. 274; *El Dorado County* v. *Elstner,* 18 Cal. 144; *Beeny* v. *Irwin,* 6 Colo. App. 66, 39 Pac. 900, 902; *Kent* v. *Wheeler County,* 21 Ga. App. 225, 94 S. E. 27; *Cain* v. *Burroughs Adding Mach. Co.,* 180 Ky. 567, 203 S. W. 315; *Stenberg* v. *State,* 48 Neb. 299, 67 N. W. 193.)

MR. JUSTICE STARK delivered the opinion of the court.

The Red Lodge-Rosebud Irrigation District is a public corporation, organized under the laws of this state for the purpose of acquiring water rights, and the construction of ditches and canals to be used in connection with the irrigation of the

lands situated within its boundaries, all of which are located in Carbon county. Charlotte Dilworth at all times herein named was, and now is, the treasurer of said county, and as such was, by law, required to hold and disburse the funds of the district.

On the twenty-eighth day of April, 1923, this district entered into a written contract with one J. S. Haley, by the terms of which the latter agreed to construct the work specified in certain schedules designated 1 and 2 in the plans adopted by the district for the completion of its canals, which contract provided that the work to be done by Haley should be performed under the supervision of the district engineer; that the engineer should make monthly measurements of all work performed and materials delivered by Haley prior to that date, classify the same according to the items named in the contract, make an estimate of the value of the labor performed and materials furnished on the basis of the unit price named in the contract, and, upon the approval of said account and estimate, the district would pay the amount shown by the estimates of the engineer. Such payments are, by law, required to be made by warrants drawn against the "construction fund" of the district, held by the county treasurer.

On or about the twenty-fifth day of May, 1925, the district engineer measured and estimated the value of the work and labor performed and materials furnished by Haley, for the purpose of determining the amount earned by him under the contract for the preceding month, and, after making all the deductions provided for by the terms of the contract, ascertained that there was then due to Haley the sum of $5,962.98; and thereafter, on or about the twentieth day of June, 1925, the said district engineer caused measurements and estimates to be made of the value of the work and labor performed and materials furnished by Haley under the terms of the contract during the month preceding that date, and cer-

tified that the further sum of $9,210.91 was due and owing to
him. These estimates were approved in all respects as pro-
vided by law. The board of directors of the district thereafter
caused its warrants, drawn upon the treasurer, against the
funds in her possession belonging to the district for the pur-
pose of paying the same, to be issued and delivered to Haley.
Haley indorsed said warrants, presented them to the treasurer
at her office, and demanded payment of the same, which was
refused.

On October 22, 1925, Haley filed in the district court a
petition reciting these facts; also that at the time he de-
manded payment of said warrants the county treasurer pos-
sessed sufficient funds available for payment of the same, and
prayed that a writ of mandate issue commanding her to do
so. Thereupon an alternative writ of mandate was issued
commanding the treasurer to pay said warrants, or show
cause why she had not done so.

The treasurer appeared in said action by filing an answer,
which, among other things, admitted that, as county treasurer,
she had on deposit in the "construction fund" of the dis-
trict the sum of $27,430.32, but alleged that the same was
not available for the payment of the warrants above men-
tioned, for the reason that before the presentation of said
warrants she had been instructed and ordered by the board
of directors of the district not to pay any warrants drawn
on its construction fund, and, further, that the moneys of
said fund in her hands should be held by her for said district
as a ten per cent holdback fund and as a penalty fund under
the Haley contract, and that if any warrants on said fund
were presented, certified as required by law, she should
register them and not pay them out of said fund; that these
instructions had not been revoked or rescinded by the dis-
trict, and were still in force and effect.

Subsequent to the filing of this answer, Haley, by his
counsel, moved the court for judgment in his favor on the

pleadings. Before this motion came on for hearing, the district, by its counsel, presented to the court an application for leave to intervene in the action. The petition was denied. The motion for judgment on the pleadings was sustained, and on November 18, 1925, judgment was entered directing a writ of mandate to issue, as prayed for. An appeal was taken from that judgment by the treasurer, which is now "pending, and execution of judgment has been stayed by the filing of a proper bond.

On November 23, 1925, the irrigation district petitioned this court for a writ of supervisory control to annul the order of the court refusing to grant its petition for leave to intervene. On this petition an order to show cause was issued. In due time the respondents appeared and filed answer. The matter was submitted to the court on this petition and answer.

At the argument counsel for the relator presented a motion for leave to amend its petition by attaching thereto and making a part thereof the answer, reply and a motion for interest and attorney's fees, filed in the *mandamus* proceeding, and the judgment entered therein. No objections were interposed to the granting of this motion, and the same is allowed.

The petition filed in this court contains a copy of the complaint in intervention which the district sought to file in the *mandamus* proceeding, and the same will hereafter be referred to as the complaint.

After reciting the institution of the *mandamus* proceedings, the complaint sets out in greater detail the facts referred to in the pleadings therein, exhibits the contract mentioned in the petition, and discloses that among its provisions were:

(a) That Haley should begin work after the district had deposited with the treasurer of Carbon county the sum of $216,381.58 for the purpose of providing funds out of which to pay Haley what he might earn under the contract, and

that the work should be completed on or before the tenth day of January, 1925;

(b) That at the end of each calendar month the engineer should make an approximate measurement of all work done and materials delivered up to date and of the value thereof, upon the basis of the unit prices agreed upon, together with all extra work, and from the total amount so found to be due to Haley there should be deducted ten per cent thereof, together with the amount of damages which the district had sustained for delays, or otherwise, under the terms of the contract, and the balance thus determined should be paid to Haley upon the approval of the account, and the ten per cent thus deducted should not become due or payable to Haley until the contract had been fully completed;

(c) That a deduction of $25 per day for each of Schedules 1 and 2 should be made for each and every day, including Sundays and holidays, that such schedule remained uncompleted, in the event that Haley should fail to complete the work at the time agreed upon.

It is stated that the above-mentioned sum of money was deposited with the county treasurer by the district prior to the tenth day of November, 1923, and that Haley commenced active work under his contract within the time agreed upon. From time to time thereafter, down to July, 1925, the district engineer made monthly estimates of the amount of work and labor performed and materials furnished by Haley, and the district, from time to time, caused warrants to be issued to Haley for the amounts of such estimates, after making the deductions provided for in the terms of the contract.

The complaint also sets out in detail damages alleged to have been sustained, and which would subsequently be sustained by the district on account of the defaults of Haley. In paragraph 15 it is alleged that on July 14, 1925, when the warrants in question were issued, these damages amounted to more than $29,250, and that the district then advised Haley:

"That it had no funds with which to pay said warrants, but agreed that said warrants could be registered with the county treasurer of Carbon county, Montana, and issued said warrants to said Haley, and said Haley agreed to accept the same and to register said warrants, so that said warrants would draw six per cent interest from the date of registration, and, at the time said Haley accepted said warrants, he understood and it was agreed between the parties hereto that said warrants would not be paid in cash by the county treasurer of Carbon county, Montana, until such time as funds were available for that purpose, and thereupon the directors of said intervener directed and ordered the county treasurer of Carbon county, Montana, not to pay said warrants, or either of them, and directed and ordered her to register the same if the said warrants were presented by the said Haley for registration."

It is further alleged that on October 5, 1925, the district passed a resolution, which, among other things, recited that the treasurer, as the custodian of the funds of the district, was then holding the sum of $27,430.32 in a fund which she had designated "construction fund"; that under the terms of the contract it was the duty of the directors of the district to deduct the ten per cent holdback as provided for in the contract, and keep the same intact until the contract had been in all things completed and accepted; that this ten per cent holdback then exceeded the sum of $21,638.58, and that there was due to the district from Haley for delays and otherwise the sum of $5,791.74; that the said sum so held by the treasurer was not properly available in the construction fund to meet the warrants held by Haley, and the treasurer was directed to transfer from the construction fund the sum of $21,638.58 to a fund which was by the resolution designated as the "ten per cent holdback fund of the construction fund," under the Haley contract, and the sum of $5,791.74 to a fund which was thereby designated as the "damage fund of

the construction fund," under the Haley contract. It was further alleged that a certified copy of this resolution was served upon the treasurer on October 6, duly filed in her office, and that she made the transfers on her books in accordance therewith.

It is also alleged that Haley had failed to complete his contract and had abandoned it; that the district had, by proper resolution, declared said contract abandoned; that Haley was insolvent; and that demand had been made upon the sureties on the bond which he had given to guarantee performance of the contract that they complete the same, which demand had been ignored.

Whether the district court was in error in granting the motion for judgment on the pleadings in the *mandamus* case cannot be reviewed in this proceeding. The only matter which we can consider on this application is whether the court should have permitted the proposed complaint in intervention to be filed.

An appeal does not lie from an order denying a motion [1] for leave to file such complaint. (*Equity Co-operative Assn.* v. *Equity Mill. Co.,* 63 Mont. 26, 206 Pac. 349.) The unsuccessful movant in such an application cannot appeal from the final judgment entered in the action, since he is not a "party" thereto within the contemplation of section 9730, Revised Codes of 1921. The only recourse open to such applicant is by application to this court for an appropriate writ.

Assuming, but not deciding, that the application for leave to intervene was made in time, if the complaint disclosed facts sufficient to entitle the relator to intervene in the *mandamus* proceeding, the order of the court denying the application was erroneous and should be vacated, and we shall proceed to a consideration of that matter.

In so far as the complaint attempted to state a cause of [2] action in favor of the district and against Haley for

damages alleged to have accrued, and which would there-after accrue by reason of breaches of the contract, it will be disregarded, for an issue on general damages is not triable in a *mandamus* proceeding. (*Bailey* v. *Edwards*, 47 Mont. 363, 133 Pac. 1095; *State ex rel. Shea* v *Cocking*, 66 Mont. 169, 28 A. L. R. 772, 213 Pac. 594.)

When the district caused the warrants to be issued and de-**[3]** livered to Haley, the treasurer was legally obligated to recognize and pay them, provided she had sufficient money in the construction fund for that purpose, unless the same had been revoked and rescinded or payment thereof stopped. It is admitted that there was $27,430.32 in this fund on July 14, 1925, and at all times subsequent thereto, but, to show that it was not available for payment of the warrants subsequent to the latter date, the resolution of October 5, above referred to, was relied upon.

Apparently the Haley contract did not call for the construction and completion of the work provided for in Schedules 1 and 2 for a specified sum, but the work actually done was to be paid for at stipulated unit prices. It was not agreed that the $216,381.58 deposited with the treasurer should cover the entire amount which might be earned under this contract. If the value of the work done by Haley, computed at the unit prices, should exceed the amount of the deposit, the district would be obliged to pay for the same at the agreed price. It would rather appear that this fund was deposited by the district as an evidence of its ability to pay Haley the amount which he would be entitled to receive from time to time for the work done at the unit price and as shown by the engineer's estimates. By the contract it was expressly agreed that the fund should be used for that purpose and no other.

The resolution of October 5 recited that there was then in this construction fund a balance of $27,430.32. This resolution did not assume to revoke, rescind or question the

validity of the warrants held by Haley. On the contrary, by necessary inference, it recognized them as valid and subsisting obligations of the district.

The complaint disclosed that, when this resolution was passed, Haley had already been paid more than $196,000 after deducting from the amount actually earned under his contract $21,638.58 as the ten per cent holdback, and $9,250 for stipulated damages, so that the amount which he had actually earned prior to that date exceeded $226,888.58, and the district was then holding back $30,888.58 of this money.

Sections 3985 and 3986, Revised Codes of 1921, contain the only authorization for the transfer of money from the construction fund of an irrigation district, and under their provisions the directors have no power to make any such transfer unless, upon completion of the district project, there is a surplus of money in such fund, when the same may be transferred to an appropriate fund for the redemption of the outstanding bonds of the district.

The mere direction of the district to the county treasurer by the resolution of October 5 to designate portions of this fund by some other name, and her compliance with this direction by bookkeeping entries in her records, did not change the status of the fund. It still remained the construction fund, although called by other names.

We conclude that, despite this resolution and the acts of the treasurer thereunder, she had in her possession sufficient funds available for payment of the warrants when they were presented to her on July 14, 1925, and still had at the time of the entry of judgment directing the peremptory writ of mandate to issue commanding her to do so.

Nor does the complaint disclose that the district had revoked and rescinded the warrants or stopped payment thereon. As shown above, this was not accomplished by the resolution of October 5. The quoted portion of paragraph 15 of the complaint, instead of alleging a revocation or rescission of

75 Mont.—10

the warrants, is a direct recognition of their validity and of the obligation of the district to pay them. If the words "the directors of said intervener directed and ordered the county treasurer of Carbon county, Montana, not to pay said warrants" were separated from their context, they would be construed as an effective order to stop payment; but read in connection with the entire sentence wherein they appear, which recognizes the validity of the warrants, but declares that at the time of their issuance it was agreed between Haley and the district that they should not be paid in cash "until such time as funds were available for that purpose," these words can mean nothing more than that the order not to pay should cease to be effective when the treasurer had funds available with which to make payment.

Finally, basing the argument on paragraph 21 of the complaint, counsel contend it shows that Haley procured the issuance of the warrants to him by fraud. This contention is not sustained by the pleading. The paragraph of the complaint relied upon does not state facts sufficient to constitute fraud by false representations. (*McIntyre* v. *Dawes,* 71 Mont. 367, 229 Pac. 846.)

Our conclusion is that the proposed complaint in intervention did not state facts sufficient to entitle the relator to intervene in the *mandamus* proceeding, and that the court did not err in refusing permission to file the same.

The application for the writ is denied and the proceeding is dismissed.

*Dismissed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and MATTHEWS concur.

Rehearing denied January 9, 1926.