STATE ᴇx Rᴇʟ. STATE BOARD OF EQUALIZATION ᴇᴛ ᴀʟ.,
Rᴇʟᴀᴛᴏʀs, *v.* JACOBSON, Cᴏᴜɴᴛʏ Cʟᴇʀᴋ, Rᴇsᴘᴏɴᴅᴇɴᴛ.

(No. 7,905.)

(Submitted December 14, 1938.   Decided December 31, 1938.)

[86 Pac. (2d) 9.]

462

*Mr. John A. Matthews,* for Relators, submitted a brief, and argued the cause orally.

*Mr. Nat Allen,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This is an original application on behalf of the State Board of Equalization and its members in their official capacities, as relators, seeking a writ of mandate against the county clerk of Golden Valley county in his official capacity.

McQuitty Brothers are the owners of certain tracts of land in Golden Valley county, Montana. The county assessor in the year 1937 fixed the valuation of this real estate for purposes of assessment. The owners of the lands appealed to the State Board of Equalization for a reduction in their valuation. On this appeal, after notice, an order was entered by the board reducing the valuation, and notice of this order was given by the board to the county assessor, and thereupon the valuation was reduced for the year 1937. For the year 1938 the county assessor again fixed the valuation of these same lands for purposes of assessment at the same figure as he had determined for the

year 1937. This was done without notice to the owners, who thereupon appealed to the county board of equalization for a reduction, which was denied, and thereafter the taxpayers appealed to the State Board, which heard the appeal and directed the assessment to be reduced in conformity with the order made in 1937. The county clerk has refused to comply with the order of reduction, and accordingly this writ was sought to compel obedience to the order of the State Board of Equalization.

The duties of the State Board of Equalization, as provided by section 15, Article XII, of the Constitution, are as follows: "The state board of equalization shall adjust and equalize the valuation of taxable property among the several counties, and the different classes of taxable properties in any county and in the several counties and between individual taxpayers; supervise and review the acts of the county assessors and county boards of equalization; change, increase, or decrease valuations made by county assessors or equalized by county boards of equalization; and exercise such authority and do all things necessary to secure a fair, just and equitable valuation of all taxable property among counties, between the different classes of property, and between individual taxpayers. Said state board of equalization shall also have such other powers, and perform such other duties relating to taxation as may be prescribed by law."

The county clerk is required by law, as soon as he receives notice from the State Board of Equalization of a statement of any change or changes by the board in the assessment books of the county, to make the corresponding changes in conformity with the order. (Sec. 2159, Rev. Codes.) Under the constitutional provision quoted, the State Board of Equalization exercises supervisory power over the acts of county assessors and county boards of equalization, and has the power to increase or decrease valuations made by them.

Section 2002.1, Id., provides that all real estate and improvements on it subject to taxation, except such as is assessed by the State Board of Equalization, shall be separately valued for assessment and taxation in the odd-numbered years, and such

valuation in each odd-numbered year shall constitute the assessed valuation until the next biennial assessment.

It is the theory of the relators that under this section the respondent county clerk was without authority to make any change in the valuation as fixed by the board for the year 1937, for the year 1938 on the same lands. The county clerk contends that section 2002.1 was impliedly repealed by section 2002, as amended several times since the enactment of section 2002.1 in 1927. Section 2002, prior to 1927 and throughout all of the subsequent amendments, including that of 1937 found in Chapter 72, section 9, at page 134 of the Laws of that year, has required the assessor to assess each year all property in his county subject to taxation. Although this statute was changed, this particular provision was found within it throughout all of these amendments.

Where a statute or section of the Code is amended merely by ██ adding to or taking therefrom, the portion carried forward in the new law is not a new law, but has been the law since the beginning. (*In re Wilson's Estate*, 102 Mont. 178, 56 Pac. (2d) 733, 105 A. L. R. 367.) Repeals by implication are not favored. (*State ex rel. Helena Allied Printing Council* v. *Mitchell*, 105 Mont. 326, 74 Pac. (2d) 417; *Box* v. *Duncan*, 98 Mont. 216, 38 Pac. (2d) 986.)

The legislature, when it enacted section 2002.1, by clear ██ language declared that the fixing of the valuation for assessment purposes was one operation and the assessment of the property for purposes of taxation was another. Without expressly amending this section, the subsequent amendment of section 2002, leaving the pertinent language of that section unchanged, the legislature clearly manifested no intention to change the meaning of the word "assess." True, definitions of the word "assess" are frequently given which include as a part of the process of assessment the fixing of the valuation for that purpose. But where the legislature has clearly adopted a definition of words used in an Act at variance with that found in dictionaries and decisions, this court will follow the definition as found in the legislative Act. (*Montana Beer Retailers' Pro-*

*tective Assn.* v. *State Board of Equalization,* 95 Mont. 30, 25 Pac. (2d) 128.)

Therefore, in the absence of an express intention to redefine the word "assess" as used in section 2002.1, under the rule that an implied repeal is not favored, we must hold that the word "assess" as used in section 2002 has the same meaning as that word found in 2002.1, and, accordingly, there is no conflict, and hence no repeal by implication.

It is also argued on behalf of the respondent county clerk ▇ that the State Board of Equalization was without jurisdiction to make any order reducing the assessment, since some of the property attempted to be described in the notice of appeal was erroneously described. The order of the board to reduce the assessment, as we were informed on oral argument, correctly described this property. The State Board of Equalization, under the constitutional provision quoted, supra, has the power to supervise these officers.

Even applying the strict rules of pleading in courts, we are not advised whether the notice of appeal above mentioned was ever amended either in fact or in conformity with the proof, and under such rules a judgment of a court would not be subject to attack as to the sufficiency of the pleading after a hearing had been had, without a complete record. We therefore must indulge the presumption of the regularity of all the proceedings leading up to the order in question. Accordingly, the contention is without merit.

Let the peremptory writ issue as prayed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES STEWART, MORRIS and ANGSTMAN concur.