CORCORAN, Appellant, *v.* STATE BOARD OF
EQUALIZATION, Respondent.

(No. 8466.)

(Submitted January 3, 1945.   Decided January 12, 1945.)

[154 Pac. (2d) 795.]

Mr. E. J. McCabe, for Appellant, submitted a brief and argued the cause orally.

Mr. R. V. Bottomly, Attorney General and Mr. I. W. Choate, Tax Counsel for State Board of Equalization, submitted a brief; Mr. Choate argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This appeal is from a judgment in favor of defendant. The action was brought to compel defendant to reduce the value of 271 lots in the city of Great Falls for assessment purposes which had been valued by the assessor at $51,325. Before commencing the action plaintiff sought the same relief first from the county board of equalization and then from the state board, and in both instances it was denied.

By stipulation the cause was submitted to the court on the record made at the hearing before the state board. The pleadings and evidence present but one issue, viz., was the valuation placed upon the property by the assessor and with which both boards and the court declined to interfere so grossly excessive and at variance with evidence of its actual cash value as to indicate arbitrary action on the part of the assessor?

The evidence shows that plaintiff purchased the property in question from the Great Falls Townsite Company on July 18, 1942. The assessment here involved is for the year 1942. The Townsite Company in May 1942 published a notice of a liquidation sale offering the lots at $15 to $25 each and declaring that the lots must all be sold by June 30th. Plaintiff purchased all the lots in a group for the sum of $1500. The lots are unimproved.

Plaintiff, who has had 32 years experience in buying and selling real estate in Great Falls, testified that the full cash value of the lots is $15 a lot. Five other real estate dealers in Great Falls placed the full cash value at prices ranging from $10 to $25 per lot for full lots and a lesser figure for fractional

lots. The highest figure testified to by anyone of these witnesses for plaintiff would place the total value at not to exceed $5,420.

The only evidence in the record which defendant relies upon is from the assessor who testified that the assessed valuation of the lots has been decreased from 1933 to 1942 by fifty per cent and that no objection was made to prior assessments by the Great Falls Townsite Company which was the owner of the property during those years. He said the valuation on the lots in question was fair and reasonable compared with other lots of the city. He further said ''the past few years we have almost had to place valuation by comparison. Of course, we did try for a long time to arrive at a valuation from sales made, that is, actual new values, but the fluctuating market on lots has been so bad the last few years on account of liquidation and selling out, and people moving away and selling cheap, it is hard to make a comparison, but in this particular block of lots they fell out in the classification from the higher price lots in the city and were reduced down to their present valuation. * * * The valuation of lots or blocks are taken from the business section of the city and graded out to the outskirts.''

In answer to the question, ''So far as this property is concerned, what the full cash value of this property is, you don't know?'' he answered: ''No, and neither do you or any other man living put a reasonable value on it and to be exact, no man can.''

It was shown that lots in the Huey addition, which are situated about the same distance from the center of town as the lots involved in this controversy, were assessed at a little more than half the valuation placed upon the lots in question here. There were a number of houses situated in the Huey addition, but the assessor testified that lots in the Huey addition are worth less than those in controversy because the ground is not so level and sewerage, water, streets and alleys cost more. Plaintiff Corcoran at one time owned 180 lots in the Huey addition and during the past ten years sold all but six or seven of them at prices ranging from $25 a lot to $100 a lot. Plaintiff testified

that those lots are better located than the lots in question because there are oiled streets in the Huey addition and nearly all streets are cut through and all streets and avenues, excepting in two blocks have water, whereas there are no water mains in most of the area here involved. Because of the testimony showing the difference between the lots involved here and those in the Huey addition, the evidence relating to the value of lots in the Huey addition is of but little aid here.

The district court was asked in this proceeding to reduce the valuation to $5,420. It is well settled that the courts will not substitute their judgment for that of the taxing officials in fixing the value of property for tax purposes. (*Danforth* v. *Livingston*, 23 Mont. 558, 59 Pac. 916; *Johnson* v. *Johnson*, 92 Mont. 512, 15 Pac. (2d) 842.) The courts will intercede however when it appears that the valuation fixed by the taxing officials is so grossly excessive as to amount to arbitrary action or to be inconsistent with the exercise of an honest judgment. (*International Business Machine Corporation* v. *Lewis and Clark Co.*, 111 Mont. 384, 112 Pac. (2d) 477; *Investors Security Co.* v. *Moore*, 113 Mont. 400, 127 Pac. (2d) 225.) For purposes of taxation the terms "value" and "full cash value" mean the amount at which property would be taken in payment of a just debt due from a solvent debtor. (Ch. 99, Laws 1939.)

This case is in some respects similar, though not identical with that of *Titlow* v. *Pierce County*, 108 Wash. 633, 185 Pac 575. There two real estate dealers testified that the fair cash market value of the platted lots involved in that case did not exceed $1 each. The assessor taxed them on a value of $5 each. A jury in condemnation proceedings had fixed the value at $1.40 per lot. The court held that on that record the valuation fixed by the assessor was so excessive that it was held to be constructively fraudulent. It has been held that the assessment of property at more than three times its fair cash value, but less than four times its actual cash value, is so excessive as to amount to constructive fraud. (*Grays Harbor Const. Co.* v. *Grays Harbor County*, 99 Wash. 184, 168 Pac. 1138; and,

see, *Finch* v. *Grays Harbor County*, 121 Wash. 486, 209 Pac. 833, 24 A. L. R. 644 and *Island County* v. *Calvin Philips & Co.*, 195 Wash. 265, 80 Pac. (2d) 840.) Aside from the fact that in his written notice of appeal from the county board of equalization to the state board plaintiff merely asked to have the assessment lowered to the sum of $16,140, all of the competent evidence of actual cash value tends to show that such value did not exceed approximately $5,400. The fact that it actually sold for $1,500 by the Great Falls Townsite Company which had held it for several years and presumptively knew of its actual value, and the fact that the Townsite Company offered the property for sale at from $15 to $25 a lot was strong proof in corroboration of the figures given by the real estate dealers. The fact that the lots were assessed in prior years on a valuation in excess of that for the year 1942 without objection by the owner is some proof that at that time they were worth what they were assessed at. That fact also perhaps created a disputable presumption or inference that they continued of the same value in 1942. That inference however could not stand in the face of the facts showing otherwise.

The defendant board in its order denying any relief to plaintiff stressed the point that if it did so it would be obliged because of the opinion in the case of *State ex rel. Schoonover* v. *Stewart*, 89 Mont. 257, 297 Pac. 476, 481, to give notice, hold hearings and reduce the valuation on all like property throughout the city of Great Falls although the owners made no complaint.

It is true that this duty was pointed out in the opinion in the *Schoonover Case,* but that opinion also states: ''But if they failed in that respect, such failure would not deprive appellants of their rights.

''If an appealing taxpayer has a right to the relief he demands he will not be denied that relief on the sole ground that other taxpayers, who may be in the same situation, but who have not availed themselves of their legal rights (*Belknap Realty*

*Co.* v. *Simineo,* supra [67 Mont. 359, 215 Pac. 659]), are not granted relief.''

It is our view that the lots were assessed in 1942 at a value so far in excess of what the evidence indicates their actual cash value was, as to indicate that the assessment was arbitrary and constructively fraudulent. As above noted, plaintiff sought an order from the lower court directing the assessment to be based upon a valuation of $5,420. The court was right in not directing what the assessed value should be, but erred in not directing the defendant board to reduce the assessed valuation to a figure consistent with proof of the actual cash value of the property.

The judgment is reversed and the cause remanded with directions to enter judgment in conformity with the views herein stated.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ADAIR, MORRIS, and CHEADLE concur.