LAURENCE S. CARLSON, as Trustee in Liquidation of Alex Shulman Co., a corporation, Plaintiff and Respondent, *v.* FLATHEAD COUNTY, et al., Defendants, and STATE OF MONTANA, et al., Intervenors and Appellants.

No. 9262.

Submitted May 9, 1955. Decided December 22, 1955.
Rehearing Denied February 20, 1956.
293 Pac. (2d) 273.

Arnold H. Olsen, Atty. Gen., Hubert J. Massman, Asst. Atty. Gen., H. O. Vralsted, Sp. Asst. Atty. Gen., and Lyman J. Hall, Deputy Asst. Atty. Gen., for appellants.

Walchli, Korn and Warden, Kalispell, for respondent.
Mr. Vralsted and Mr. Daniel J Korn argued orally.

MR. JUSTICE BOTTOMLY:

This is an appeal by the State of Montana and the state board of equalization of the State of Montana from the judgment made and entered October 23, 1952, in the district court of Flathead County.

This controversy arose over the taxable value fixed by the state board of equalization on the real estate, improvements thereon and the personal property of the Alex Shulman Company located in Flathead County, Montana, for the year 1950, the Alex Shulman Company contending the assessed valuation was excessive.

From the record it appears that the Alex Shulman Company was a foreign corporation, incorporated under the laws of the State of Washington; that in December 1950 said corporation was dissolved and that Laurence S. Carlson was designated as trustee in liquidation thereof.

The record further shows that on or before November 30, 1950, Alex Shulman Company elected to and did pay one-half of its said taxes so determined by the state board of equalization for the year 1950 and elected not to pay the other one-half until on or before May 21, 1951, and that it did pay to the county treasurer of Flathead County, Montana, the said first half of said taxes in the sum of $4,926.41.

Thereafter and on January 26, 1951, plaintiff Carlson, as trustee for Alex Shulman Company, proceeding under the provisions of R.C.M. 1947, section 84-4502, commenced this action in the district court of Flathead County, praying for judgment against Flathead County and its county treasurer for the aforesaid sum of $4,926.41, or such portion thereof as has been illegally levied and collected.

It appears that the county assessor of Flathead County had assessed the property of Alex Shulman Company for the year 1950; that thereafter Alex Shulman Company applied to the

board of county commissioners of Flathead County, while it was sitting as a board of equalization, for a hearing; that after hearing before said county board of equalization the board denied the application *in toto;* that the Alex Shulman Company then appealed to the state board of equalization of the State of Montana; that on September 20, 1950, the state board of equalization heard the appeal at Kalispell, and after a full hearing the said board made its order reducing the original assessed valuation of the lands in the sum of $31,709 and reducing the assessed valuation on the improvements thereon in the sum of $25,000; upon this reduced assessed valuation the tax was computed.

The tax for state purposes computed thereon amounted to approximately $641.96, the county and local tax amounted to approximately $9,210.85 or a total tax for the year 1950 of $9,852.81.

Following the filing of the complaint on January 26, 1951, no move or appearance was made by or on behalf of the County of Flathead to defend against or resist the said action. Therefore on December 10, 1951, the State of Montana and the state board of equalization filed a petition for leave to intervene in the action and tendered complaint in intervention.

On January 7th the judge made, and on January 8, 1951, filed his order granting the State of Montana and the state board of equalization permission to intervene and to file said complaint resisting, opposing and defending against plaintiff's claims, demands and action.

Thereupon plaintiff filed a motion to strike the complaint in intervention and on August 13, 1952, the judge by order granted the motion of plaintiff to strike such complaint, whereupon the State of Montana and the state board of equalization filed their election to stand upon their said complaint in intervention.

Thereafter on motion of Edward Schroeter, county attorney of Flathead County, and E. B. Foot, deputy county attorney, the judge entered and filed the judgment of dismissal of said

complaint in intervention on October 23, 1952. This appeal followed.

The only question pertinent to this appeal is: Was the judge correct in entering judgment dismissing the complaint in intervention.

Clearly the judge was in error.

The controlling statute is R.C.M. 1947, section 93-2826, which reads: "Any person may, before the trial, intervene in an action or proceeding *who has an interest in the matter in litigation,* in the success of either of the parties, or an interest against both. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant, and is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court and served upon the parties to the action or proceeding who have not appeared, and upon the attorneys of the parties who have appeared, who may answer or demur to it as if it were an original complaint." Emphasis supplied.

This section of our Code, like all others, is to be liberally construed to effect the legislative intent and purpose. R. C.M. 1947, sections 93-401-15, 93-401-16. "The codes establish the law of this state respecting the subjects to which they relate and their provisions and all proceedings under them are to be liberally construed with a view to effect their objects and to promote justice." R.C.M. 1947, section 12-202.

The determinative questions here raised are of vital interest and concern to the State of Montana and to the state board of equalization as they pertain to our tax laws, the procedure relative thereto and the public fiscal policy of the sovereign State of Montana.

The complaint in intervention sets forth *inter alia* that the State of Montana and the state board of equalization, and each

thereof, have an interest in the litigation, that in addition to the levy of taxes upon said reduced valuation for Flathead County for the year 1950, the State of Montana by the order of the state board of equalization required taxes thereon also to be levied for state purposes, which state levies were made under and as required by section 2, Chapter 25, Laws of Montana 1949, as follows: 6 mills for the university millage fund; $\frac{1}{2}$ mill for the state insane hospital bond interest and sinking fund; 1 mill for the university building bond interest and redemption fund.

The complaint further sets forth that the taxes levied against said property as aforesaid for the said year of 1950 approximate $9,852, and the state's proportion is an integral part thereof; that the State of Montana and the state board of equalization would be adversely affected in the event the court might overlook the facts to be brought out and the state have no opportunity to be heard.

The district court was correct in granting the State of Montana and the state board of equalization leave to intervene. The State and the state board of equalization were interested parties. In Stack v. Coyle, 59 Mont. 444, 197 Pac. 747, 749, Chief Justice Brantly, speaking for this court, said of section 6496, now section 93-2826, supra, that "The statute is broad enough in terms to permit intervention in any case, *provided only* the person seeking to intervene *can show either an interest in the subject-matter of the action, or an interest in the success of either of the parties,* or an interest in the subject matter against both." Emphasis supplied. Compare Moreland v. Monarch Min. & Mill Co., 55 Mont. 419, 178 Pac. 175; Burgess v. Hooks, 103 Mont. 245, 62 Pac. (2d) 228.

In State ex rel. Thelen v. District Court, 93 Mont. 149, 157, 158, 17 Pac. (2d) 57, 58, Justice Angstman speaking for the court said of section 9088, Rev. Codes 1921, now section 93-2826:

"Under our statute, any person may before trial intervene in an action or proceeding, who has an interest in the matter in

litigation, in the success of either of the parties, or an interest against both. \* \* \*

"\* \* \* Prompted by a desire to do no injustice, and to render complete justice, courts allow the right of intervention in an equity case with liberality, when the petitioner's rights will be directly affected by the decree."

In Equity Co-operative Ass'n v. Equity Co-operative Milling Co., 63 Mont. 26, 37, 206 Pac. 349, 352, this court said in considering this section: "\* \* \* it appears to us that the trial court was in error in not allowing the filing of the complaint in intervention. The statute is plain \* \* \* and, as the interveners made *prima facie* showing of interest in the subject of the litigation, they should have been allowed to intervene." Compare State ex rel. Westlake v. District Court, 118 Mont. 414, 167 Pac. (2d) 588, 590, 163 A.L.R. 911, wherein this court said: "It is also made clear by the holding in the same case [Burgess v. Hooks, 103 Mont. 245, 62 Pac. (2d) 228, 229] that 'after intervention, the intervener's rights are as broad as those of the other parties to the action' and the holding in State Bank of New Salem v. Schultze, 63 Mont. 410, 209 Pac. 599, 603, that 'from a reading of the statute, it was clearly the legislative intent that the ordinary rules of pleading shall apply to a complaint in intervention \* \* \*.'"

The sovereign State of Montana, acting for all of the people, delegates the right to intervene whenever a person, a corporation or other entity brings itself within the terms of section 93-2826, supra. The sovereign people are the ones who thus have delegated such power, right or authority as is deemed proper but also retaining for their sovereign use the right to intervene on behalf of themselves through their designated state officers, when that right has been *prima facie* shown.

The complaint in intervention here filed under leave of the court had and obtained, states facts which, if true, show plainly and unequivocally that inteveners, the State of Montana and the state board of equalization, have a vital public interest in the subject matter of the action, that is, in the taxes due the State

of Montana as directed by the state board of equalization, and as enforced by said board under its constitutional powers, and expressly subsection (6) of section 84-708, R.C.M. 1947, which specifically requires said board to supervise the administration of all revenue laws of the State of Montana *and assist in their enforcement.*

The district court erred in granting the motion of plaintiff to strike the interveners' complaint in intervention and in entering the judgment herein. Such judgment of the district court dismissing the complaint in intervention is reversed and the cause is hereby remanded with directions to reinstate the complaint in intervention and to then proceed in conformity with the views expressed herein.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICE ANDERSON, concur.

MR. JUSTICE ANGSTMAN: (dissenting).

This action is one to recover taxes paid under protest. The complaint alleges in substance that plaintiff is the duly elected trustee in liquidation of the Alex Shulman Company, a corporation, which voted to voluntarily dissolve its corporate existence; that in or around June 1949, and for almost 50 years prior thereto, the Glacier Park Company and its predecessor in interest, the Somers Lumber Company, owned the property operated by the Somers Lumber Company at Somers, Montana, in conducting a sawmill, planer and general lumber business, and which company on the last-named date decided to discontinue its business at Somers and to dispose of its plant and property; that it advertised certain of its described property for sale and called for bidders; that due notice of the sale was given by newspaper advertisement along the line of the Great Northern Railway Company; that pursuant to the notice the Alex Shulman Company, in November 1949, submitted its bid to the Glacier Park Company of $80,000 in cash for all the property so advertised for sale; that thereafter the Glacier Park

Company accepted the bid and transferred and conveyed the property to the Alex Shulman Company.

It is alleged that prior to the time of the purchase of the property by Alex Shulman Company a considerable portion of the sawmill and planing mill equipment had been dismantled and disposed of; that the business theretofore conducted with the property had been discontinued and the remainder of the property—that sold to the Shulman Company—had only salvage value.

It is alleged that the assessor of Flathead County, disregarding the cash value of the property, arbitrarily and wrongfully classified the property as an industrial site and wrongfully assessed all the improvements on the property at the sum of $217,-400, and arbitrarily assessed the personal property at the sum of $70,000; that the entire property so purchased by the Alex Shulman Company was arbitrarily assessed for the year 1950 at a total valuation of $334,260 as compared with a cash value thereof amounting to $80,000; that the assessed valuation so placed on the property was arbitrary and unconscionably excessive; that the Alex Shulman Company appealed to the county board of equalization for a reclassification and reassessment of the property but obtained no relief there; that it thereupon appealed to the state board of equalization for relief and that board fixed the full value of the entire property at $277,-551.

The Alex Shulman Company, being still dissatisfied with the assessment placed upon its property, paid the taxes under protest under R.C.M. 1947, section 84-4502, and brought this action to recover the tax or such part thereof as the court should hold to be excessive.

The complaint was filed on January 26, 1951. Prior to that time and on December 6, 1950, the Shulman Company brought an action in the district court of Flathead County for a writ of mandate to compel the state board of equalization to further reduce the assessed value of the property. The state board of equalization thereupon instituted an original proceeding before

this court to prohibit the writ of mandate sought for in the district court of Flathead County; that original proceeding is reported in State ex rel. Goza v. District Court, 125 Mont. 296, 234 Pac. (2d) 463.

In that case it was held by this court that the remedy of the Shulman Company was by action under R.C.M. 1947, section 84-4502, to recover the tax paid under protest and not by writ of mandate.

During the pendency of the original proceeding in this court reported in 125 Mont. 296, 234 Pac. (2d) 463, and until final determination thereof, no further proceedings were taken in the action brought to recover the taxes paid under protest. No inference can be drawn therefrom that the interests of the state in the suit were being neglected or not defended as intimated in the majority opinion.

The situation was evidently as counsel for respondents assert in their brief that "By agreement between counsel for plaintiff and counsel for defendants in this action, the matter was held in abeyance pending the outcome of the proceedings on the writ of mandate."

The determinative question on the appeal is whether the court properly sustained the motion to strike the complaint in intervention filed by the State of Montana and the state board of equalization and in entering judgment of dismissal of the complaint in intervention. The question is attempted to be raised by a purported appeal filed by the State of Montana and the state board of equalization.

If we assume that the State of Montana and the state board of equalization had the right to appeal, the question then is whether they have a right to intervene as parties.

The Supreme Court of Oklahoma under statutes similar to ours has held that a municipality may not intervene in such an action from the mere fact that the action would affect the amount of taxes it would receive. This was held in First National Bank of Muskogee v. Pitts, 120 Okl. 8, 249 Pac. 907, 908, where the court said:

"Section 9971, supra [Okla. Comp. St. 1921], provides that the action for recovery of alleged illegal taxes paid under protest should be maintained against the county treasurer. The statute does not give a municipality authority to intervene as a party defendant, because judgment in favor of the plaintiff might affect the amount of taxes such municipality would receive. It is said by the city of Muskogee that it ought to be permitted to intervene as a party defendant, because its officers are more familiar with the matters involved in the suit than the county treasurer. This may be true, but its officers may testify in the trial of the cause as effectively as if the city was a party defendant. The trial court committed error in permitting the city of Muskogee to intervene as a party defendant."

There is no question but what the State of Montana is interested to a slight extent in the outcome of the action. It is entitled to a small part of the tax sought to be recovered. Our statute on intervention is R.C.M. 1947, section 93-2826. It allows any person to intervene in an action or proceeding "who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both." This statute must be liberally construed and the right to intervene extended to anyone fairly within the terms of the statute. State ex rel. Thelen v. District Court, 93 Mont. 149, 17 Pac. (2d) 57.

Section 84-4502, R.C.M. 1947, provides for the bringing of an action to recover taxes paid under protest by providing that such an action may be brought in any court of competent jurisdiction "against the officers to whom said license or tax was paid, or against the county or municipality in whose behalf the same was collected."

Had the legislature intended that the State of Montana or the state board of equalization should have been named as a party defendant in such an action, it could easily have said so. Under the familiar doctrine of *expressio unius est exclusio alterius* the enumeration of those who must be made parties by implication excludes all others.

Furthermore the rule applicable here is stated in 67 C.J.S.,

Parties, section 59, page 989, as follows: "Ordinarily a person whose interests are already represented will not be permitted to intervene. However, intervention by such a person has been permitted where intervention is shown to be necessary to protect the interest of the intervenor, as where there is fraud or collusion between the original parties." Here it should be observed there is no charge of fraud or collusion, hence the general rule has application, namely, that one whose interests are already represented will not be permitted to intervene. Compare State Bank of Outlook v. Sheridan County, 72 Mont. 1, 230 Pac. 1097.

The same principle is stated in 39 Am. Jur., section 60, page 934, as follows: "It is universal that no one has any right to intervene in any action unless he has some right to protect which is not being protected."

Under the laws of this state the county treasurer collects all taxes due to not only the county but to the state. When suit to recover the taxes paid under protest was brought against the county officer chargeable with the collection of the tax, the interest of the state was already adequately represented by such officer.

Under our statute, R.C.M. 1947, section 16-3101, the county attorney represents the state in all matters and proceedings to which it is a party and must defend all suits brought against the state or the county in which he is county attorney. Of course the attorney general has the right of supervisory control over the county attorney, R.C.M. 1947, section 82-401, and may assist the county attorney in the discharge of his duties. State ex rel. Nolan v. District Court, 22 Mont. 25, 55 Pac. 916. But this the attorney general does not seek to do, but undertakes to bring the State of Montana and the state board of equalization into the case as parties. As before noted, since the interest of the state was already represented by the county treasurer and the county attorney there existed no right of the State of Montana or the state board of equalization to intervene in the case as parties. Had the attorney general been of the opin-

ion that the interests of the state were not being adequately protected by the county attorney, he could have injected himself as an adviser or assistant to the county attorney in defending the action. But in my opinion the district court was right in holding that the State of Montana and the state board of equalization had no right to intervene as parties in the case.

The case of State ex rel. Westlake v. District Court, 119 Mont. 222, 173 Pac. (2d) 896, 900, 169 A.L.R. 827, is relied on as authority in support of the right of intervention. There is some language in the majority opinion in that case that supports the contention of appellants. There the attorney general represented and answered for the commissioner of agriculture and other state officers who were named as defendants in an action brought to question the validity of a statute imposing a license tax on oleomargarine. The interveners were dairymen and butter makers interested in sustaining the statute because of the competition coming to them from dealers in oleomargarine. They specifically alleged in their petition that "their rights were jeopardized by certain admissions made by the attorney general in his answer to the Brackman complaint and that relator's property rights would not be adequately protected unless they were permitted to be heard in their own behalf."

Thus in that case the charge was made that the interests of the interveners were not being adequately represented and there was at least an attempt to bring the case without the general rule. This court merely held in that case that the district court was wrong in holding that before a person will be permitted to intervene his interest must be " 'direct and immediate in character, and not consequential.' "

The court then went on to hold that interveners had the right to intervene because of the fact defendants were in no position to defend the constitutionality of the statute because of admissions contained in their answer. Discussion of this point appears on page 240 of the opinion in 119 Mont., and on page 905 of 173 Pac. (2d).

Hence that case was not controlled by the general rule that

36

a party cannot intervene when he is already adequately represented in the action. There is no claim made here that the state's interests were not being adequately protected by the county treasurer and the county attorney.

I think the judgment appealed from should be affirmed.

MR. JUSTICE DAVIS:

I concur in the foregoing dissenting opinion of Mr. Justice Angstman.